Frederick KIRKPATRICK,
Petitioner–Appellant,

v.

Robert H. BUTLER, Sr., Warden, Louisiana State Penitentiary and the Attorney General of the State of Louisiana, Respondents–Appellees.

Nos. 88–3253, 88–3863.

United States Court of Appeals,
Fifth Circuit.

April 17, 1989.

Opinion on Denial of Rehearing and Rehearing En Banc June 1, 1989.

Robert McGlasson, Austin, Tex., Patrick L. Durusau, Jena, La., for petitioner-appellant.

Harry H. Howard, Asst. Atty. Gen., State of La., New Orleans, La., for State of La.

William R. Campbell, Jr., Zelden & Rand, New Orleans, La., for Butler.

Before GEE, RUBIN, and KING, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The State of Louisiana having sentenced Frederick Kirkpatrick to death by electrocution, he seeks habeas corpus relief, contending that he was denied the effective assistance of counsel at trial when his lawyer failed to seek the suppression of evidence seized by the police from his residence. After reviewing the record, including the memoranda filed in the state and federal courts, the opinion of the Louisiana Supreme Court, the district court's two opinions, and the transcript of the evidentiary hearing held by the district court on remand, we find no violation of Kirkpatrick's constitutional right to counsel and, therefore, affirm the judgment of the district court denying him the writ.

### I.

On the night of January 27, 1982, Frederick Kirkpatrick and Charles Faulkner were in the home of Steven Radoste, who lived alone in the Pearl River area of St. Tammany Parish. During the night, Radoste was murdered: he was struck in the head twice with a heavy glass object, stabbed with a butcher knife in the abdomen and chest, and shot in the head. Radoste's house was robbed, and his pickup truck was stolen.

The following day, Royce Cooley informed Mike Hatcher, the Chief of Detectives of the Meridian, Mississippi, Police Department, that he had accompanied two people who lived in apartments below his— Frederick Kirkpatrick and Charles Faulkner—to an area just south of Meridian where he saw them burn a brown and white Ford pickup truck. Cooley also told Hatcher that one of the men had a gun and had threatened him, and that he, Cooley, had removed the radio and spare tire from the truck and placed them in his car. To corroborate Cooley's information, Hatcher went to Cooley's car where he observed the radio and spare tire. Then, guided by Cooley to a location west of Meridian, Hatcher found a brown and white Ford pickup truck still smoldering. The truck's radio was missing, and the rims of the wheels were the same style as those on the spare tire Hatcher had seen in Cooley's car. Upon returning to the police station, Hatcher swore out an affidavit:

> Freddie Kirkpatrick on or about 1/28/82, in the corporate limits of Meridian, Lauderdale County, Mississippi, did unlawfully and willingly violate state stature [sic] of Mississippi (arson) ... [by] burning a brown and white Ford pickup being the property of another. This information was received from a reliable confidential informant and has proven to be factual and true. I have personally observed said truck in burned condition and smolder[ing].

Based upon this affidavit, a magistrate issued a warrant to arrest Kirkpatrick for arson.

Hatcher proceeded immediately to the apartment of Kirkpatrick's girlfriend, where he had been informed Kirkpatrick was living, to arrest Kirkpatrick. Hatcher had also been informed that Faulkner lived in an adjacent apartment. Hatcher and two officers went to Kirkpatrick's front door, while a third officer guarded the back of the building. When Hatcher knocked on the front door, Kirkpatrick's girlfriend answered and, Hatcher later testified, "tried to make out like nobody was there but her,

but you could hear other people in there." Hatcher announced that he had a warrant for Kirkpatrick's arrest. Apparently unaware that the police were at his front door, Kirkpatrick came to the door, pushed it open, and stepped out onto the porch, where Hatcher informed him that they had a warrant for his arrest. Kirkpatrick "smashed back and tried to go back into the house," but the police grabbed him before he could do so.

The police then conducted what they called a "sweep" through Kirkpatrick's apartment. Although they did not find Faulkner, Kirkpatrick's confederate, the police observed a number of items stacked on the floor, including two television sets, a wine rack, and some leather jackets. They did not, however, seize these items. Hatcher later testified that "Mr. Faulkner escaped by going into a closet and up into the attic and losing us that way."

After being advised of his rights, Kirkpatrick confessed that he and Faulkner had driven the truck to a remote area and that he had watched Faulkner burn it. He also stated that Faulkner possessed a .22 caliber Derringer firearm. After the truck had been identified as belonging to Radoste, the Meridian police obtained a warrant to search Kirkpatrick's apartment for evidence relating to the crimes of larceny and murder. This warrant was based, in part, upon observations made by the police officers who had entered Kirkpatrick's apartment at the time he was arrested. Police seized several of Radoste's belongings from Kirkpatrick's apartment, as well as a pair of Kirkpatrick's sneakers, the sole pattern of which was matched to a bloody footprint at Radoste's home. They later arrested Kirkpatrick for murdering Radoste.

## II.

A jury in the Twenty–Second Judicial District Court for the Parish of St. Tammany, Louisiana, convicted Kirkpatrick of first degree murder and sentenced him to death. The Louisiana Supreme Court affirmed his conviction and sentence.[1] After the Louisiana Supreme Court had denied his petition for rehearing, Kirkpatrick filed

a petition for a writ of certiorari in the Supreme Court of the United States, but the Court denied the writ.[2] Thereafter, Kirkpatrick filed a petition for an evidentiary hearing, post-conviction relief, and a writ of habeas corpus in state district court. After holding an evidentiary hearing, the state district court denied the writ. The Louisiana Supreme Court denied Kirkpatrick's petition for a Remedial Writ.

Six days before his scheduled execution, Kirkpatrick filed an application for a stay of execution, evidentiary hearing, and writ of habeas corpus in the federal district court for the Eastern District of Louisiana, alleging 24 violations of his constitutional rights, including ineffective assistance of counsel for failing to seek the suppression of the evidence obtained from the allegedly invalid search warrant. After staying Kirkpatrick's execution and conducting an evidentiary hearing, the district court denied the writ,[3] but subsequently granted Kirkpatrick a certificate of probable cause authorizing appeal and another stay of execution.

On appeal, this court affirmed the judgment of the district court "insofar as it denie[d] relief on all of the grounds asserted except the alleged ineffectiveness of counsel, particularly in failing to seek suppression of the evidence seized in Mississippi."[4] Because the district court did not make a factual determination with regard to this claim, we vacated the judgment denying relief on this one ground, and instructed the district court to consider it on remand. Kirkpatrick filed another petition for a writ of certiorari with the Supreme Court of the United States, which the Court denied.[5]

On September 18, 1986, the district court concluded, without conducting an evidentiary hearing, that Kirkpatrick had not been denied effective assistance of counsel. After considering Kirkpatrick's motion to alter or amend the judgment, the district court found that an evidentiary hearing was "necessary to determine the issues specified in the remand" and, subsequently, held a hearing "limited to the question of whether the arresting officers had probable cause to arrest [Kirkpatrick] on Janu-

---

1. *State v. Kirkpatrick,* 443 So.2d 546 (La.1983).

2. *Kirkpatrick v. Louisiana,* 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 847 (1984).

3. *Kirkpatrick v. Blackburn,* 597 F.Supp. 1562 (E.D.La.1984).

4. *Kirkpatrick v. Blackburn,* 777 F.2d 272, 288 (5th Cir.1985).

5. *Kirkpatrick v. Blackburn,* 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986).

ary 28, 1982." On November 30, 1987, the district court reaffirmed the conclusion it had reached on September 18, 1986, holding that both the arrest and the search warrant were valid, and that had Kirkpatrick's counsel attempted to suppress the evidence obtained from the search of the apartment, his motion would have been denied.

### III.

■ As a preliminary matter, Kirkpatrick asserts that the evidentiary hearing held by the district court on remand was inadequate: the court considered only one aspect of counsel's ineffectiveness—his failure to move to suppress evidence obtained from the search of Kirkpatrick's apartment, and did not address other aspects of counsel's ineffectiveness, including his failure to investigate the case, prepare witnesses, and construct a defense, and the conflict of interest created by his former representation of and friendship with members of the victim's family.

We originally remanded this case to the district court because

[t]he district court's conclusory review of the record pretermit[ted] the contention that we view[ed] as serious: whether the evidence obtained in the search of Kirkpatrick's residence, which established his complicity at least in robbery, would have been admitted had counsel moved to suppress it, and, if so, the effect of exclusion of that evidence.[6]

The district court sought to comply with our remand order by conducting an evidentiary hearing "limited to the question of whether Kirkpatrick's lawyer's failure to move to suppress the evidence seized from his apartment violated Kirkpatrick's sixth and fourteenth amendment right to effective assistance of counsel." In its circumscribed inquiry, the court limited the evidentiary hearing essentially to the testimony of Detective Hatcher, who recounted his interaction with the informant, and what took place at Kirkpatrick's apartment when he was arrested. The court did not receive testimony on, and failed to consider, the other bases offered by Kirkpatrick upon which to evaluate the effectiveness of his trial counsel.

Detective Hatcher's testimony, however, provided a sufficient basis for the district court to determine, as we instructed it to do in our prior panel opinion, "the alleged ineffectiveness of counsel, particularly in failing to seek suppression of the evidence seized in Mississippi."[7] The court did not err in refusing to consider a new matter after we had considered the 24 contentions Kirkpatrick raised on appeal, and remanded the case with a single, limited instruction.

### IV.

In *Strickland v. Washington*[8] the Supreme Court announced the standard for determining when counsel in a state criminal trial has been so ineffective as to warrant federal relief. To succeed on a claim of ineffective assistance of counsel, a defendant must demonstrate both that his counsel's performance was "outside the wide range of professionally competent assistance,"[9] and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[10] If proof of one element is lacking, the court need not consider the other. The burden of proving either element is heavy, as "counsel is strongly presumed to have rendered adequate assistance and ... exercise[d] ... reasonable professional judgment,"[11] and every legal proceeding commands a "strong presumption of reliability."[12]

The district court held that "[h]ad a motion to suppress [evidence seized from Kirkpatrick's apartment] been filed it would not have been granted," and "[c]ounsel cannot be faulted for neglecting to file a motion which would have been denied." Kirkpatrick challenges the district court's analysis of the alleged fourth amendment violation, claiming that the police arrested him in his home without a warrant, since the warrant for his arrest for arson was invalid under the then-applicable standards established in *Aguilar v. Texas*[13] and *Spinelli v. United States*.[14] Moreover, Kirk-

---

6. *Kirkpatrick,* 777 F.2d at 286.

7. *Ibid.,* 777 F.2d at 288.

8. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

9. *Ibid.,* 466 U.S. at 690, 104 S.Ct. at 2066.

10. *Ibid.,* 466 U.S. at 694, 104 S.Ct. at 2068.

11. *Ibid.,* 466 U.S. at 690, 104 S.Ct. at 2066.

12. *Ibid.,* 466 U.S. at 696, 104 S.Ct. at 2069.

13. 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

14. 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

patrick asserts that the warrantless search of his apartment, during which time the police made observations that later enabled them to obtain a search warrant, was invalid.

### A. The Arrest Warrant

■ The district court did not consider Kirkpatrick's contention that the arrest warrant was invalid under *Aguilar* and *Spinelli;* instead, it found that Kirkpatrick was arrested in his front "doorway," a public place in which the police may make a warrantless arrest provided they have probable cause to believe that the arrested individual committed a felony.[15] The district court's factual finding that Kirkpatrick was arrested in his doorway—a public place—is not contradicted by any evidence in the record. Indeed, as we have pointed out, the evidence indicates that he was arrested outside the doorway, on his front porch. Thus, the police could properly arrest Kirkpatrick if they had probable cause to believe that he had committed a felony.

Kirkpatrick does not claim, however, that the police lacked this probable cause. Indeed, the record would not support such a claim: an eyewitness informant had told Detective Hatcher that Kirkpatrick had burned a brown and white Ford pickup truck from which the informant had removed the radio and spare tire; and Hatcher had verified the details of this tip, observing a Ford radio and spare tire in the informant's car, and then accompanying the informant to a location where he saw a brown and white Ford pickup truck, still smoldering, and missing its radio. Because the information Hatcher corroborated provided him with probable cause to arrest Kirkpatrick for arson, he could arrest Kirkpatrick in a public place—in his doorway or on his porch—without a warrant. Had Kirkpatrick's counsel moved to suppress the evidence obtained as a result of Kirkpatrick's arrest, such as inculpatory statements Kirkpatrick made immediately after he was arrested, the trial court would have denied the motion, and the result of the proceeding would have remained unchanged.

### B. The Search Warrant

Kirkpatrick also challenges the validity of the warrant to search the apartment where he was living. The magistrate issued a warrant authorizing the police to search Kirkpatrick's apartment for

A.  Microwave oven, Riccar brand
B.  25 inch Silvertone TV, serial # unknown
C.  22 caliber high standard, derringer pistol
D.  Papers, credit cards, and other personal items of Steve Radoste
E.  Clothing items of Freddie Kirkpatrick and Charles Faulkner that may contain blood stains
F.  Mens type tennis shoe with zig-zag type sole

An affidavit submitted by Detectives Robbins and Robinson provided the basis for the warrant.

> This affidavit is being submitted based upon information received from Chief of Detectives, J.M. Hatcher, who recovered one (1) Ford pick up truck which was stolen from victim ... on or about January 28, 1982, by Charles Faulkner and Freddie Kirkpatrick.
>
> Said vehicle was burned ... and said subjects burned vehicle and the fact that Freddie Kirkpatrick has verbally admitted that Faulkner brought the pick up to his home; 1615 24 Avenue, on January 28, 1982, and the fact that on the 29 day of January 1982 information was received from Detective Clark Thomas ... in Slidell, Louisiana that victim was murdered and house burgalarized [sic] and items as described in [paragraph]# 3 as well as other items of silver and coins were taken.
>
> *It should be noted that when Kirkpatrick was arrested for arson on January 28, 1982 Chief of Detectives Mike Hatcher personally observed a microwave oven and three or four TV[s] sitting on floor at 1615 24 Avenue apartment of [Kirkpatrick]. Affiant ha[s] reason to ... believe ... that said items are stored or being kept in said apartment.* The impression of a zig-zag type[ ] [ ]tennis shoe track was left at the scene of the murder where suspect stepped in blood leaving the impression (emphasis supplied).

---

15. *See United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); *United States v. Carrion,* 809 F.2d 1120, 1128 (5th Cir.1987); *United States v. Mason,* 661 F.2d 45, 47 (5th Cir.1981).

The affidavit submitted in support of the search warrant reveals that probable cause to search Kirkpatrick's apartment was based, in part, on observations that the police had made during their warrantless sweep of the apartment at the time of Kirkpatrick's arrest. Kirkpatrick contends that the magistrate should not have relied on these observations to support a finding of probable cause and the issuance of a search warrant because they were obtained during an illegal search of his apartment.

Crediting the testimony of Detective Hatcher at the evidentiary hearing, the district court denied Kirkpatrick's claim. It found that

> Kirkpatrick had tried to flee into the apartment. Police knew that Faulkner was still at large and that Kirkpatrick's girlfriend was in the apartment. They had reason to be concerned for the safety of all present. Under these circumstances, a limited warrantless sweep of the premises was permissible, even though the arrest took place outside the apartment. *United States v. Bowdach,* 561 F.2d 1160, 1168–69 (5th Cir.1977); cf. *United States v. Hultgreen [Hultgren],* 713 F.2d 79, 88–89 (5th Cir.1983).

Our review of the district court's analysis proceeds from the fundamental premise enunciated by the Supreme Court in *Payton v. New York* [16] that "the Fourth Amendment has drawn a firm line at the entrance to the house." Consequently, a "search or seizure carried out on a suspect's premises without a warrant is *per se* unreasonable." [17] The Constitution requires the police, before they search a person's home, to convince an independent judicial officer that they have probable cause to believe that a certain person or item is in that location. [18]

■ When the police arrested Kirkpatrick on his porch—outside of his house in a public place—they had no authority to conduct a warrantless search through his home on the basis that it was incident to his arrest. The Supreme Court has held that

> [a] search may be incident to an arrest "'only if it is substantially contemporaneous with the arrest and is confined to the *immediate* vicinity of the arrest....'" If a search of a house is to be upheld as incident to an arrest, that arrest must take place *inside* the house, ... not somewhere outside—whether two blocks away, ... twenty feet away, ... or on the sidewalk near the front steps. [19]

Similarly, when the police seek to search a person's home in order to arrest an individual who does not reside there, the Supreme Court requires that the police "first obtain[ ] a search warrant" [20] in order to protect the resident's fourth amendment rights.

The "firm line" drawn at the entrance to the home is not, however, impregnable. The Supreme Court has consistently held that, even without a search warrant, there is reasonable cause to search a home incident to a valid arrest, or to search a home for a non-resident, if the police "can show ... the presence of 'exigent circumstances,'" [21] such as hot pursuit of a felon who has fled into the house, [22] or the possession of cause to believe either that evidence in the house may be destroyed or removed, [23] or that the lives of police officers or other persons may be endangered by persons inside of the house. [24]

■ While exigent circumstances may permit the police to enter and search a home without a search warrant, "no decision of th[e] Supreme Court supports the existence of a general 'security check' exception to the warrant requirement." [25] An effort to find and arrest a suspected accom-

**16.** 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980).

**17.** *Coolidge v. New Hampshire,* 403 U.S. 443, 474, 91 S.Ct. 2022, 2042, 29 L.Ed.2d 564 (1971); *see Payton, supra.*

**18.** *See Jones v. United States,* 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958).

**19.** *Vale v. Louisiana,* 399 U.S. 30, 33–34, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409 (1970) (emphasis on "inside" in original, other emphasis added) (citations omitted); *see Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

**20.** *Steagald v. United States,* 451 U.S. 204, 205, 101 S.Ct. 1642, 1644, 68 L.Ed.2d 38 (1981).

**21.** *Coolidge,* 403 U.S. at 474–75, 91 S.Ct. at 2042 *see Payton,* 445 U.S. at 586–87, 100 S.Ct. at 1380; *Steagald,* 451 U.S. at 205–06, 101 S.Ct. at 1644. *Cf. Dorman v. United States,* 435 F.2d 385 (D.C. Cir.1970).

**22.** 451 U.S. at 205–06, 101 S.Ct. at 1644, 68 L.Ed.2d 38 (1981).

**23.** *See Vale,* 399 U.S. at 35, 90 S.Ct. at 1972.

**24.** *See Hayden, supra.*

**25.** *Vasquez v. United States,* 454 U.S. 975, 987, 102 S.Ct. 528, 534–35, 70 L.Ed.2d 396 (1981) (Brennan, J., dissenting from denial of petition for certiorari).

plice not yet in custody does not *per se*, therefore, constitute exigent circumstances. The police's perception of exigent circumstances, obviating the need to present probable cause to a magistrate, must have some grounding in reality:

> Police officers have a right to conduct a quick and cursory check of a residence *when they have reasonable grounds to believe* that there are other persons present inside the residence who might present a security risk.[26]

Moreover, when making this "quick and cursory" inspection, the "arresting officers are entitled to look [only] 'for people that might be hiding and ... [pose] a danger ..., not to look for things.'"[27]

■ Despite the police's belief in the likelihood that a confederate of an arrested individual may almost always be in the arrestee's apartment,[28] the police must articulate reasonable grounds for believing that the suspected accomplice is indeed there. An unsubstantiated belief that confederates may gather in a single apartment does not suffice to permit the police to search an apartment that they would otherwise lack a valid basis to search. Were we to absolve the police from the requirement that they articulate a reasonable basis for believing that an arrested individual's confederate is inside his house, we would deny to all arrested individuals whom the police believe to have committed a crime with the aid of other people the fourth amendment's guarantee that their "persons, houses, papers, and effects" not be subject to "unreasonable searches and seizures."

■ Whether the police had reasonable grounds to search through Kirkpatrick's apartment is a factual determination made by the district court whose findings we review under the clearly erroneous standard.[29] The district court upheld the warrantless search of Kirkpatrick's apartment on the basis of the existence of an exigent circumstance—"the danger associated with the arrest." A review of the cases in which this court has considered whether the police had reasonable grounds to believe that exigent circumstances existed persuades us that the district court's finding is not clearly erroneous.

In *United States v. Jackson*, we permitted the police to search a motel room after they had observed "suspects leaving the room," "had no way of knowing that the two suspects were the only remaining people," and had "reason to believe that a gun was somewhere in the motel."[30] In *United States v. Sheikh*, we permitted the police to search a motel room after arresting its occupant 12–15 feet outside of it based on the fact that he had left the door ajar and the police had a "reasonable suspicion that one or more persons might have remained in the hotel room."[31] In *United States v. Cravero*, we permitted the police to search an apartment after an arrest of a non-resident based upon "suspicious noises" the police heard "coming from the bathroom," the heinous nature of the crime, and the prior, valid arrest of a resident in possession of a loaded pistol.[32] In *McGeehan v. Wainwright*, we permitted the police to search a trailer after four suspects had emerged on the basis that the police knew a weapon had been used in an armed robbery an hour earlier, none of the suspects carried a weapon out of the trailer, and the police had "concluded that additional confederates might be concealed inside the darkened trailer with the missing

**26.** *United States v. Bowdach*, 561 F.2d 1160, 1168 (5th Cir.1977) (emphasis supplied); *see United States v. Kolodziej*, 706 F.2d 590, 596–97 (5th Cir.1983); *United States v. Jackson*, 700 F.2d 181, 189–190 (5th Cir.), *cert. denied sub nom., Hicks v. United States*, 464 U.S. 842, 104 S.Ct. 139, 78 L.Ed.2d 132 (1983); *United States v. Sheikh*, 654 F.2d 1057, 1071–78 (5th Cir.1981), *cert. denied*, 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982); *United States v. Diecidue*, 603 F.2d 535, 558–59 (5th Cir.1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980); *United States v. Cravero*, 545 F.2d 406, 417–18 (5th Cir.1976), *cert. denied sub nom., Miller v. United States*, 429 U.S. 1100, 97 S.Ct. 1123, 51 L.Ed.2d 549 (1977); *McGeehan v. Wainwright*, 526 F.2d 397, 399–401 (5th Cir. 1976), *cert. denied*, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1975); *Hopkins v. State of Alabama*, 524 F.2d 473, 475 (5th Cir.1975); *United States v. Looney*, 481 F.2d 31, 32–33 (5th Cir.), *cert. denied*, 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 476 (1973). *Cf. United States v. Gamble*, 473 F.2d 1274 (7th Cir.1973); *United States v. Briddle*, 436 F.2d 4 (8th Cir.1970), *cert. denied*, 401 U.S. 921, 91 S.Ct. 910, 27 L.Ed.2d 824 (1971).

**27.** *Kolodziej*, 706 F.2d at 597 (emphasis omitted) (citing *Looney*, 481 F.2d at 33).

**28.** *See Chimel*, 89 S.Ct. at 2046 (White, J., dissenting); *Kolodziej*, 706 F.2d at 597.

**29.** *See Kolodziej*, 706 F.2d at 596.

**30.** *Jackson*, 700 F.2d at 190.

**31.** *Sheikh*, 654 F.2d at 1072.

**32.** *Cravero*, 545 F.2d at 418.

shotgun."[33] In *United States v. Looney,* we permitted the police to search Looney's residence based upon "information" the confederate had given to an undercover police agent.[34] In *United States v. Kolodziej,* we affirmed the district court's finding that the police could not search a home because "[n]o evidence was presented to show how the officers had reason to believe that [the confederate] was there, in fact had ever been there, or was dangerous."[35]

While Hatcher's *post hoc* testimony that "Faulkner escaped" does not satisfy the burden upon the police to demonstrate that, *before* entering the apartment, they had reasonable grounds for believing that Faulkner was in it, Hatcher's other testimony does support the district court's finding of exigency. Given the proximity of Faulkner's and Kirkpatrick's apartments, the suspicious behavior of Kirkpatrick's girlfriend when she answered the door, the noise in the back of the apartment that the girlfriend pretended not to hear, and Kirkpatrick's attempt to flee back into the apartment, the district court was not clearly erroneous in concluding that the police had reasonable grounds to believe that Faulkner may have been in the apartment, posing a threat to the police and Kirkpatrick's girlfriend who remained in the apartment.

■ Evaluating counsel's conduct according to the standards enunciated in *Strickland,* we are unable to conclude that Kirkpatrick was denied the effective assistance of counsel. Under the first prong of the *Strickland* test, we do find counsel's conduct to be "outside the wide range of professionally competent assistance."[36] Unless counsel had a tactical consideration to the contrary, and counsel has offered none, there was no reason for him not to challenge the evidence seized at Kirkpatrick's apartment. The alleged violation of Kirkpatrick's fourth amendment right posed a serious threat to the prosecution's case; this evidence, including items belonging to Radoste, inextricably linked Kirkpatrick to the robbery, a necessary element to

the jury's imposition of the death penalty. Moreover, the admissability of these items into evidence was genuinely a close call, depending upon whether the court found that the police had reasonable grounds upon which to believe that their lives or the lives of others were endangered. Given the seriousness and difficulty of the issue, any competent attorney exercising reasonable professional judgment would have challenged the admissability of the evidence seized at the apartment.

Kirkpatrick has not demonstrated, however, that "but for counsel's unprofessional errors, the result of the proceeding would have been different."[37] Despite the difficulty of the fourth amendment issue, we do not find clearly erroneous the district court's judgment that had a motion to suppress the evidence seized from Kirkpatrick's apartment been filed, it would have been denied; the items seized from the apartment would, in all likelihood, have been admitted into evidence, and the outcome of the trial would have remained unchanged. Finding no prejudice or unreliability in the trial or its verdict, we are unable to conclude that Kirkpatrick was denied the effective assistance of counsel.

### V.

Kirkpatrick also claims that the jury instruction regarding the law of principals did not require the state to prove specific intent, an essential element of the offense of first degree murder under Louisiana law. We considered and denied this claim in our prior opinion.[38] Our conclusion that the jury instruction permitted the jury to "'focus on the personal intent and culpability of the defendant himself, and not merely that of an accomplice,'"[39] is unaffected by our intervening decision in *Flowers v. Blackburn.*[40]

In a supplemental brief, Kirkpatrick contends that since our prior panel opinion, the Supreme Court has altered the standard by which we review whether Kirkpatrick's eighth amendment rights were violated at the sentencing phase of trial.[41] Our review here is limited, however, to the district court's decision on remand. We do not

---

33. *McGeehan,* 526 F.2d at 399.

34. *Looney,* 481 F.2d at 31.

35. *Kolodziej,* 706 F.2d at 597.

36. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066.

37. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

38. *Kirkpatrick,* 777 F.2d at 286–88.

39. *Ibid.,* 777 F.2d at 286 (citing *Reddix v. Thigpen,* 728 F.2d 705, 708 (5th Cir.), *cert. denied,* 469 U.S. 990, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984)).

40. 779 F.2d 1115 (5th Cir.1986).

41. *See Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 S.Ct. 347 (1986); *Satterwhite v. Texas,* —— U.S. ——, 108 S.Ct. 1792, 100 L.Ed. 284 (1988).

review claims outside of the scope of the remand order.

For the foregoing reasons, the judgment of the district court is AFFIRMED, the writ of habeas corpus is DENIED, and the stay of execution is VACATED.

### On Petition for Rehearing and Suggestion for Rehearing En Banc.

We instructed the district court on remand to consider "the alleged ineffectiveness of counsel, particularly in failing to seek suppression of the evidence seized in Mississippi." After conducting an evidentiary hearing, the district court held that counsel was not ineffective for failing to seek suppression of this evidence. The court also denied Kirkpatrick's claim that his trial attorney was ineffective because he was an "attorney to and fishing buddies with" members of the victim's family, and inadequately prepared and conducted a defense at the guilt and sentencing phases of trial. The district judge summarily stated: "I have twice read the entire transcript of the trial as well as the evidentiary hearing held in state court for the purpose of evaluating the performance of defendant's trial counsel. I find that defense counsel was not ineffective and that he did all that could reasonably be done for the benefit of his client under the circumstances of this case." We affirmed the district court's judgment.

Kirkpatrick asserts on rehearing that, as a capital habeas petitioner, he "deserves to know why [all of the grounds of] his [ineffective assistance] claim[] are rejected based on a reasoned decision" rather than a summary denial. Given our remand instruction, the district court's focus was perfectly appropriate, and our opinion was, therefore, correctly confined to review of its judgment. Accordingly, we deny the petition for rehearing. Nonetheless, because Kirkpatrick may raise again in an application to the Supreme Court for a writ of certiorari the grounds that the district court summarily considered, we also comment on their merits.

When one attorney represents several defendants in a single case, the Supreme Court has required that, to establish the constitutional predicate for an ineffective assistance claim, the defendant must show that his counsel "simultaneously"[1] or "actively represented conflicting interests."[2] We have applied this same standard when considering whether a defense attorney's representation of other parties, including the victim, in separate litigation constitutes a conflict of interest.[3]

■ Kirkpatrick has never alleged that his trial counsel actively represented members of the victim's family while defending him.[4] Absent simultaneous, active representation of an interested party, friendship with and past representation of members of a victim's family does not preclude an attorney from representing the defendant when, as here, the attorney revealed his relationship to the defendant and the court. Indeed, one can envision circumstances in which such representation may be highly desirable. While Kirkpatrick's attorney sought to excuse himself because of his relationship with the victim's family, the judge denied his request, and Kirkpatrick does not challenge this ruling.

■ In preparation for trial, Kirkpatrick's attorney interviewed prosecution witnesses. At trial, he presented a defense—that the victim had made homosexual advances against which Kirkpatrick was defending himself. At the guilt phase of the trial, counsel stated that this self-defense theory was "possibly" true; "in fact, more than a possibility. Possibly a probability." In view of the evidence that Kirkpatrick had planned the robbery of the victim, counsel apparently chose as a matter of strategy not to endorse Kirkpatrick's version unqualifiedly. We cannot say that this tactic was inappropriate or prejudicial.

At sentencing, counsel confronted a verdict of guilty and sought to save Kirkpatrick from the death penalty. The jury had, by its verdict, already indicated a lack of sympathy for Kirkpatrick. After calling Kirkpatrick's girlfriend to testify about how Kirkpatrick took good care of her and her two sons, counsel told the jury that although it might feel "justified" in imposing the death penalty, an alternate punishment was more appropriate. Counsel evi-

---

1. *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680 (1942); *Holloway v. Arkansas,* 435 U.S. 475, 482, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426 (1978); *Zuck v. Alabama,* 588 F.2d 436, 438 (5th Cir.1979), *cert. denied,* 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979).

2. *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980); *Baty v. Balkcom,* 661 F.2d 391, 395–96 (5th Cir.1981), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982).

3. *See Castillo v. Estelle,* 504 F.2d 1243, 1245 (5th Cir.1974).

4. *See id.* at 1244–45.

dently felt it necessary to walk a fine line, acknowledging his client's guilt while attempting to elicit some sympathy from the jury.

In the trial of lawsuits, as in war, victory finds a thousand fathers, defeat is an orphan.[5] It is always possible to conjecture that defense counsel could have done more—conducted more investigation, called more witnesses, or engaged in more cross-examination—and that these additional efforts might have altered the result. That is not, however, the standard under which we review counsel's conduct. Although counsel's arguments failed to persuade the jury not to convict Kirkpatrick or sentence him to death, they do not indicate that counsel's performance was "outside the wide range of professionally competent assistance."[6]

Accordingly, Kirkpatrick's petition for rehearing is DENIED, and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Federal Rules of Appellate Procedure and Local Rule 35) the Suggestion for Rehearing En Banc is DENIED.

---

**5.** *See* Count Galeazzo Ciano, The Ciano Diaries, 1939–1943; President John F. Kennedy, April 21, 1961.

**6.** *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). *Cf.* *Baty,* 661 F.2d at 394–95; *Francis v. Spraggins,* 720 F.2d 1190, 1193–95 (11th Cir.1983), *cert. denied,* 470 U.S. 1059, 105 S.Ct. 1776, 84 L.Ed.2d 835 (1985).