**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 31, 2009

Charles R. Fulbruge III
Clerk

No. 08-70035

ANTHONY BARTEE

Petitioner - Appellant

v.

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:06-CV-263

Before HIGGINBOTHAM, BARKSDALE, and ELROD, Circuit Judges.

PER CURIAM:[*]

In 1998, Anthony Bartee was sentenced to death in Texas for the murder
of David Cook, committed during a robbery. He seeks a Certificate of
Appealability (COA) from our court in order to be able to appeal from the district
court's denial of federal habeas relief. Along that line, he requests a COA for
four issues. In addition, he seeks a remand for consideration of claimed newly
discovered evidence. DENIED.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

I.

On 17 August 1996, the victim's body was discovered by police and his family in his home in San Antonio, Texas. He had been shot twice in the head and stabbed in the shoulder. The bullet fragments at the scene were consistent with having been fired from a pistol owned by the victim. This pistol, and the victim's red Harley Davidson motorcycle, were missing from his home.

At some point that summer, Bartee had asked an acquaintance to assist him in robbing and killing a neighbor, informing him this neighbor "had some gold [credit] cards and a motorcycle" that Bartee wanted. And, two days prior to the discovery of the victim's body, Bartee had informed another acquaintance, Munoz, that he intended to "ace some white dude out". Bartee unsuccessfully solicited both Munoz and several others to assist him in achieving this result. That same day, at nearly midnight, Bartee arrived at Munoz' home, riding a Harley Davidson motorcycle and claiming to carry a gun. Several witnesses identified this motorcycle as being similar or identical to the victim's.

In April 1997, Bartee was indicted for capital murder. In April 1998, on the day the trial's guilt phase was to begin, one of Bartee's attorneys, Sawyer, who had conducted the month-long voir dire of the jury, notified the court that he had discovered that morning that he was acquainted with the victim's family and asked to withdraw as Bartee's co-counsel. Sawyer informed the court he was concerned "there might be a basic built-in conflict later on in trial" as a result of this acquaintance. He was replaced, and the trial court delayed resuming the trial for four weeks.

In May 1998, the jury found Bartee guilty of capital murder. At the punishment phase, two women testified to Bartee's having sexually assaulted them at knife-point in 1982 when they were teenagers. Bartee called as witnesses his father and a public-school risk counselor. The jury found, *inter alia*: (1) beyond a reasonable doubt, there was a probability Bartee "would

2

commit criminal acts of violence that would constitute a continuing threat to society"; and (2) there were inadequate mitigating circumstances for Bartee to be sentenced to life in prison, rather than death. A death sentence was imposed.

On direct appeal, Bartee raised 12 issues. The Texas Court of Criminal Appeals, in May 2000, affirmed the conviction and sentence. Bartee did not seek review by the Supreme Court of the United States.

Bartee began a state habeas proceeding in January 2000, raising 37 issues. During an evidentiary hearing, Bartee called four witnesses: (1) his father; (2) Bartee's lead trial counsel; (3) the lead prosecutor from the trial; and (4) a private investigator who helped interview potential witnesses for Bartee's defense at trial. In October 2005, the state habeas trial court entered findings of fact and conclusions of law and recommended denial of relief.

In March 2006, in a two-page order, the Texas Court of Criminal Appeals adopted the state habeas trial court's findings of fact and conclusions of law and denied relief.

In February 2007, Bartee filed his petition for federal habeas relief, raising 31 issues. That September, the State filed an answer and motion for summary judgment. For the reasons stated in its 203-page opinion, the district court denied relief in August 2008 and, in that opinion, *sua sponte* denied a COA for any of Bartee's claims. *Bartee v. Quarterman*, 574 F. Supp. 2d 624, 714 (W.D. Tex. 2008).

Bartee filed a notice of appeal in August 2008. The district court treated it as an implicit request for a COA, which it denied that month. That November, Bartee requested a COA from our court.

## II.

Bartee's 28 U.S.C. § 2254 habeas application is subject to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *E.g.*, *Penry v. Johnson*, 532 U.S. 782, 792 (2001).

Under AEDPA, Bartee may not appeal the denial of habeas relief unless he first obtains a COA from either the district, or this, court. 28 U.S.C. § 2253(c); *Miller v. Dretke*, 404 F.3d 908, 912 (5th Cir. 2005) (citations omitted). The district court must first decide whether to grant a COA; only if it is denied by that court may a COA on that issue be requested here. FED. R. APP. P. 22(b)(1). Having been denied a COA by the district court, Bartee requests a COA here for each of the four issues discussed *infra*.

To obtain a COA, Bartee must make "a substantial showing of the denial of a constitutional right". 28 U.S.C. § 2253(c)(2); *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483 (2000). To make such a showing when the district court's habeas denial is on the merits of an issue, Bartee must demonstrate: "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (reasonable-jurists standard). *Miller-El*, 537 U.S. at 336 (quoting *Slack*, 529 U.S. at 484).

In deciding whether to grant a COA, we can make only a threshold inquiry into the district court's application of AEDPA to Bartee's constitutional claims; we may not consider the factual or legal merits in support of those claims. *Miller-El*, 537 U.S. at 336. "When a court of appeals sidesteps this process by first deciding the merits of an appeal, and then justifying its denial of a COA based on its adjudication of the actual merits, it is in essence deciding an appeal without jurisdiction." *Id.* at 336-37.

For purposes of our threshold inquiry, we are cognizant that, under AEDPA, the district court was required, with limited exceptions described below, to defer to the state court's resolution of Bartee's claims. Those exceptions turn on the character of the state-court's ruling. *Foster v. Quarterman*, 466 F.3d 359, 365 (5th Cir. 2006).

First, on questions of law, as well as mixed questions of law and fact, the district court was required, under AEDPA, to defer to the state-court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court". 28 U.S.C. § 2254(d)(1); *see Miller*, 404 F.3d at 913. The state-court's decision is considered contrary to clearly established federal law if it "reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts". *Miller*, 404 F.3d at 913 (quoting *Miniel v. Cockrell*, 339 F.3d 331, 337 (5th Cir. 2003)) (internal quotation marks omitted).

Second, under AEDPA, our threshold inquiry must recognize the district court's obligation to defer to the state-court's factual findings, unless they "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding". 28 U.S.C. § 2254(d)(2). Along that line, the district court was required to presume the state-court's factual findings were correct; in district court, Bartee had to rebut that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Moreover, our threshold inquiry requires consideration of a COA request against the backdrop of the elements of Bartee's underlying constitutional claims. *See Miller*, 404 F.3d at 913. Needless to say, meaningful review of the district court's ruling, for COA purposes, on whether Bartee made the requisite 28 U.S.C. § 2253(c)(2) "substantial showing of the denial of a constitutional right" requires our considering these elements.

Initially, Bartee contends this matter should be remanded to district court in the light of new evidence: genetic testing of blood and hair found at the murder scene which, he claims, establishes his actual innocence. In the alternative, he contends he is entitled to a COA for four claims: (1) the prosecutor's impermissible comment on Bartee's failure to testify; (2) the

prosecution's failure to disclose *Brady* material; (3) denial of counsel and conflict of interest; and (4) ineffective assistance of counsel. For the reasons discussed in greater detail, *infra*, remand is *not* required and the other four issues do *not* satisfy the above-stated standards for a COA's being granted.

## A.

For obvious reasons, Bartee's procedural contention—that we should remand this matter to district court because of the claimed new evidence (DNA) "establishing his actual innocence"—will be considered before examining his COA requests. *See Thompson v. Quarterman*, 292 F. App'x 277, 284-85 (5th Cir. 2008) (unpublished) (considering claimed procedural errors in federal habeas proceeding prior to examining COA request). It is unclear whether Bartee presents his claimed actual innocence as grounds for habeas relief, or whether he asserts such innocence as part of his other claims for which he requests a COA. We will assume the latter, its being well established, of course, that actual innocence is not grounds for federal habeas relief from a state-court conviction. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993).

It appears Bartee advances his "actual innocence" claim as support for his lesser-included-offense-instruction and ineffective-assistance-of-counsel claims. Although not clearly articulated, the claimed exculpatory evidence would presumably be used to demonstrate the requisite prejudice for an ineffective-assistance claim. Bartee failed to present such a claim to the state habeas court; but the district court could consider it because the State did not object. Because such a claim was not considered by the state habeas court, the district court reviewed it *de novo*.

Bartee contended in district court that the jury should have been permitted to consider the lesser included offenses of robbery or aggravated robbery, on the factual theory that Bartee robbed the victim but did not kill him. Bartee claims two gang members committed the murder. (Notably, Bartee has

*not* requested a COA from our court on his lesser-included-offense-instruction claim.)

The district court denied relief for this claim, according to Bartee, primarily due to a lack of evidence to support his alternative theory of the murder. Bartee urges our remanding this matter to district court for it to consider his lesser-included-offense claims in the light of "this newly discovered evidence".

Bartee cites no authority in support of his proposition that this "newly discovered evidence" compels remanding for new consideration of his lesser-included-offense claims. Noting that actual innocence is not a grounds for federal habeas relief, the State also contends Bartee's evidence would not satisfy this standard in any event.

Assuming we can consider this new DNA evidence—a point the State does not contest—it would not alter the district court's analysis. The district court did not reject Bartee's lesser-included-offense claims because of an absence of evidence from which a rational juror could have concluded others were present that night. Instead, it concluded there was no evidence from which a rational juror could have concluded someone other than Bartee had stabbed the victim's throat after he had been shot and killed. The court noted that Bartee had identified "no evidence in the trial record establishing that either [of the gang members he alleges to have murdered the victim] ever assaulted [the victim] with a knife". *Bartee*, 574 F. Supp. 2d at 679. Bartee does not challenge this conclusion.

Moreover, the district court concluded that, even if Bartee did not "fire the fatal shots[,] . . . the evidence permits only one rational inference: acting with the intent to rob [the victim], [Bartee] attempted to actively participate in the fatal assault upon [the victim] by stabbing him before the fatal shots were fired and then slashing his neck after the fatal shots were fired". *Id*. at 680. Under

the Texas law of parties, the district court concluded, Bartee would be liable even if another fired the fatal shot. Accordingly, the DNA evidence to which Bartee refers proves at most that someone other than Bartee was present, a fact not inconsistent with the "one rational inference" the evidence permitted.

Along this line, the 3 September 2008 Serology/DNA Report which Bartee appended to his brief here notes that it did not compare the hair or blood to that of the victim because no sample had been submitted. It is, therefore, entirely possible this DNA evidence proves nothing at all.

Assuming the DNA evidence proves anything, it does not alter the district court's analysis that there was no evidence in the record to support a rational juror's concluding someone other than Bartee used a knife on the victim. Bartee has not challenged the district court's characterization of the record, nor, as noted, has he sought a COA regarding the lesser-included-offense-instruction issue. Accordingly, his remand request is without merit.

## B.

As noted, Bartee requests a COA for each of the following four claims: (1) the prosecutor commented on Bartee's failure to testify; (2) a *Brady* violation; (3) denial of counsel and conflict of interest; and (4) ineffective assistance of counsel. Again, none satisfies the standard for a COA's being granted.

## 1.

Bartee contends the prosecutor, in closing argument, commented on Bartee's failure to testify at trial, in violation of the Fifth Amendment. During closing argument at the punishment phase, the prosecutor, in referring to one of Bartee's character witnesses who had described Bartee as "a model prisoner", asked: "Is a model prisoner somebody who doesn't admit they have committed a crime?" The trial court overruled Bartee's objection to this comment, construing it merely as a reference to Bartee's continued assertions of his innocence of the two sexual assaults of which he previously had been convicted.

8

The prosecutor subsequently commented on Bartee's failure to "own up to one bit . . . of responsibility". The trial court sustained Bartee's objection to this comment and instructed the jury to disregard it, but denied his motion for a mistrial.

Bartee contested these rulings in his direct appeal. Regarding the first comment, the Texas Court of Criminal Appeals concluded that, in context, the comment did not refer to Bartee's failure to testify and, instead, clearly referred to his statements to one of his character witnesses that he was not guilty of the sexual assaults for which he previously had been convicted. The Texas Court of Criminal Appeals acknowledged that the second comment was ambiguous enough that it could have been viewed as a comment on Bartee's failure to testify. It concluded, however, that the trial court's instruction to disregard the comment was enough to cure any possible error.

Bartee also raised these claims in his state habeas proceeding, but the state habeas court held the prior consideration of this claim on direct appeal precluded their review in the state habeas proceeding. It held, in the alternative, that if the claims differed from those raised on direct appeal, they could have been raised then and were not appropriate bases for habeas relief.

In denying federal habeas relief on this issue, the district court concluded that none of the comments could have been construed as referring to Bartee's failure to testify. The district court also concluded that, even if there were ambiguity regarding the second comment, the trial court's instructing the jury to disregard it "eliminated any threat of prejudice to petitioner". Lastly, it concluded that any error arising from the closing argument would be harmless. Accordingly, the district court concluded that, under AEDPA, the state-court rejection of this claim "was neither contrary to, nor involved an unreasonable application of, clearly established Federal Law".

Bartee contends that the district court and Texas Court of Criminal Appeals came to different conclusions regarding the meaning of the prosecutor's comments, the Texas court finding the second comment ambiguous but the district court finding it not a reference to the failure to testify. Bartee contends the district court thereby improperly made findings of fact when AEDPA compelled it to defer to those by the state court. Accordingly, Bartee asserts a COA should be granted on this issue because, in view of the district court's and the Texas Court of Criminal Appeals' having reached different conclusions regarding the meaning of the second comment, reasonable jurists already have disagreed on this issue.

Bartee's contentions fail for at least two reasons. First, he misreads the district court's opinion. The district court does *not* simply conclude the second comment was merely a reference to Bartee's continued declarations of innocence regarding the sexual assaults. (Of course, the district court did not engage in *de novo* review of these claims; its analysis of Bartee's claims was only to determine whether, under AEDPA, the state-court decision involved an unreasonable application of clearly established law.) Instead, the district court was applying the framework of *Cotton v. Cockrell*, 343 F.3d 746, 751 (5th Cir. 2003) (quoting *Jackson v. Johnson*, 194 F.3d 641, 652 (5th Cir. 1999)), which holds a comment does not violate the Fifth Amendment unless "the prosecutor's manifest intent in making the remark must have been to comment on the defendant's silence, or the character of the remark must have been such that the jury would naturally and necessarily construe it as a comment on the defendant's silence". The district court merely noted that these comments, in context, neither "manifested a prosecutorial intent to comment on petitioner's failure to testify at trial, [nor] were of such a character as to necessarily have been construed by the jury as a comment on petitioner's failure to testify". *Bartee*, 574 F. Supp. 2d at 684. Accordingly, the district court was not making a finding of fact, but was,

instead, applying our precedent to the facts of this case to determine the reasonableness, under AEDPA, of the state-court resolution of the issue.

Secondly, this is only one of three alternative reasons given by the district court in support of its conclusion that, under AEDPA, the state-court resolution of this claim was not unreasonable. The district court also noted that, even if there were ambiguity, it had been cured by the trial court's instruction to the jury to disregard the comments. Finally, it noted that these comments, even if impermissible, were harmless. The district court did *not*, as Bartee now contends, "determin[e] independently that the prosecutor's remark was not what the trial court had found it to be".

Notably, Bartee makes no attempt to demonstrate, under AEDPA, how the state-court conclusion there was no violation of Bartee's Fifth Amendment right was an unreasonable application of clearly established law. In sum, he fails to demonstrate that jurists of reason could debate the district court's resolution of this claim.

2.

Bartee contends a COA should be granted regarding the prosecution's alleged failure to disclose materials it was required to disclose under *Brady v. Maryland*, 373 U.S. 83 (1963). He bases the claimed *Brady* violation on the assertion that, "[w]ithin a few months after the trial", two of the State's witnesses received "very favorable deals on their cases".

Bartee pursued this *Brady* claim before the state habeas court. That court rejected it, finding: "Bartee presented no evidence to establish the existence of any 'deals' between the prosecution and witnesses".

The district court concluded that, under AEDPA, the state habeas court's resolution of this claim was reasonable because, *inter alia*, under *Knox v. Johnson*, 224 F.3d 470, 482 (5th Cir. 2000) (quoting *Goodwin v. Johnson*, 132

11

F.3d 162, 187 (5th Cir. 1998)), "a nebulous expectation of help from the state . . . is not *Brady* material".

In support of his *Brady* claim, Bartee offered evidence in district court that had *not* been presented to the state habeas court. Although the district court concluded this evidence would not have altered its analysis of the claim, it concluded that, because this evidence had not been presented to the state habeas court, it could not consider it.

Assuming *arguendo* we can consider Bartee's new evidence, he nevertheless fails to establish his entitlement to a COA on this issue. This evidence establishes only that two of the State's witnesses received favorable dispositions in their own criminal proceedings, subsequent to their testimony in Bartee's trial. He has presented no evidence of an agreement between the State and the witnesses. Accordingly, at most, he has established these witnesses had the earlier-described "nebulous expectation of help from the state". Bartee has not, therefore, established that jurists of reason would debate the district court's resolution of his *Brady* claim.

3.

Bartee contends he was denied counsel because Sawyer, one of Bartee's attorneys, withdrew after discovering he knew the victim's family, and after he had represented him during the investigation for trial and jury selection. Michael Sawyer began serving as counsel on or about 1 March 1998. Voir dire began on 9 March 1998, and a jury was selected by 8 April. On 13 April, the day the trial's guilt phase was to begin, Sawyer informed the trial court that he was acquainted with the victim's family and asked to withdraw as counsel, citing the potential conflict.

According to Bartee, Sawyer's primary responsibility was jury selection. Bartee contends that one of two things must be true: either Sawyer had performed so little investigation that he did not realize he knew the victim's

12

family, or he knew of the conflict and neglected to inform the court or Bartee of it. In either event, Bartee contends, he was deprived of his Sixth Amendment right to counsel.

The state habeas court rejected Bartee's claim, finding both that Bartee did not "produce any substantive evidence establishing" a conflict of interest and that Bartee had failed to show the conflict had an adverse impact on Sawyer's performance. The state habeas court also found it relevant that Sawyer was never Bartee's sole counsel. "[A]t all relevant times Bartee was represented by another competent attorney who provided effective representation".

In denying federal habeas relief for this claim, the district court found: the state habeas court's concluding the actual conflict of interest standard of *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980), did not apply to Bartee was not unreasonable, under AEDPA, because Bartee could show neither an actual conflict nor any adverse effect on his representation.

The district court reached the same conclusion, under AEDPA, regarding Bartee's claim to a presumption of prejudice under *United States v. Cronic*, 466 U.S. 648 (1984). Because he was represented throughout voir dire by his lead counsel as well as by Sawyer, the district court concluded that, even if Sawyer's investigation was inadequate, it would not have risen to the level of being a total failure "to subject the prosecution's case to meaningful adversarial testing". Lastly, the district court found Bartee had "presented the state habeas court with no evidence showing . . . Sawyer's relationship with the [victim's] family . . . had any effects . . . analogous to the extreme situations in which the Supreme Court" has presumed prejudice under *Cronic*. *Bartee*, 574 F. Supp. 2d at 645.

Accordingly, under AEDPA, the district court concluded the state habeas court's rejection of these claims "was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, . . . nor an

13

unreasonable determination of the facts in light of the evidence presented in [Bartee's] state habeas corpus proceeding". *Id.*

a.

Bartee seeks a COA in order to appeal a conflict-of-interest claim under *Cuyler*. There, the Court addressed "whether the mere possibility of a conflict of interest warrants the conclusion that the defendant was deprived of his right to counsel". *Cuyler*, 446 U.S. at 345. Unlike ineffective-assistance-of-counsel claims, governed by *Strickland*'s prejudice requirements, under *Cuyler*, "prejudice is presumed if the defendant shows that an actual conflict of interest adversely affected his lawyer's performance". *Beets v. Scott*, 65 F.3d 1258, 1265 (5th Cir. 1995) (en banc) (citing *Cuyler*, 446 U.S. at 348).

As our court noted in *Beets*, 65 F.3d at 1265, "[t]he Supreme Court has not expanded *Cuyler*'s presumed prejudice standard beyond cases involving multiple representation". There is nothing in the record suggesting Sawyer ever *represented* the victim's family, only that he knew them socially. Furthermore, even when *Cuyler* might be applicable, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance'". *Strickland v. Washington*, 466 U.S. 668, 692 (1984) (quoting *Cuyler*, 446 U.S. at 350). Bartee has neither established that Sawyer's acquaintance with the victim's family constituted an actual conflict of interest, nor that Sawyer's claimed conflict adversely affected his performance.

In short, *Cuyler* is simply inapplicable to Bartee's Sixth Amendment claims. *See also Kirkpatrick v. Butler*, 870 F.2d 276, 284 (5th Cir. 1989) (Statement On Petition for Rehearing and Suggestion for Rehearing En Banc) ("[F]riendship with and past representation of members of a victim's family does not preclude an attorney from representing the defendant when, as here, the attorney revealed his relationship to the defendant and the court"). Accordingly,

14

reasonable jurists could not debate the district court's conclusion that, under AEDPA, the state habeas court's rejection of Bartee's *Cuyler* claim was not unreasonable.

b.

In *Cronic*, the Court considered which "circumstances . . . are so likely to prejudice the accused that" a petitioner need not prove actual prejudice when advancing an ineffective-assistance-of-counsel claim. 466 U.S. at 658. The Court recognized three exceptions to the normal rule that a petitioner advancing an ineffective-assistance-of-counsel claim must prove actual prejudice in addition to deficient performance. *See Bell v. Cone*, 535 U.S. 685, 695-96 (2002) (summarizing the three situations from *Cronic*). Under *Cronic*, prejudice can be presumed: (1) if the petitioner "is denied the presence of counsel at a critical stage", *id.* at 695 (internal quotation marks and citations omitted); (2) if "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing", *Cronic*, 466 U.S. at 659; and (3) "where counsel is called upon to render assistance under circumstances where competent counsel very likely could not", *Bell*, 535 F.3d at 696. As discussed below, because none of the *Cronic* exceptions applies, Bartee has not demonstrated that jurists of reason could disagree with the district court's conclusion that, under AEDPA, the state court's rejection of Bartee's *Cronic* claim was not an unreasonable application of clearly established law.

Regarding the first exception, as the district court noted, Bartee was represented throughout his trial by his lead counsel. Accordingly, even if Sawyer were somehow constructively absent, Bartee cannot say he was without counsel at a critical stage.

Regarding the second exception, Bartee does not even appear to contend that Sawyer failed to subject the prosecution's case to meaningful adversarial testing.

15

Finally, he does not suggest how this case is similar to those in which the third exception has been found to apply.

The cases Bartee cites do not make debatable the district court's conclusion regarding his *Cronic* claim. *Burdine v. Johnson*, 262 F.3d 336, 338 (5th Cir. 2001) (en banc), found the first *Cronic* exception to apply when petitioner's counsel had slept during portions of the trial during which evidence against defendant was admitted. There is no assertion here that Sawyer was absent or asleep during some stage of the proceedings. Bartee's claim is that Sawyer did his job poorly, not that he failed to do it at all.

Bartee cites *Satterwhite v. Texas*, 486 U.S. 249, 256 (1988), for the proposition that "[s]ome constitutional violations . . . by their very nature cast so much doubt on the fairness of the trial process that, as a matter of law, they can never be considered harmless". Bartee contends: because Sawyer "was so unfamiliar with the facts of the case that he didn't even realize that he knew the victim and his family, this Court can have no confidence in the fairness of the entire trial". *Satterwhite*, however, is entirely irrelevant. The state habeas court did not employ harmless-error analysis in rejecting Bartee's *Cronic* claim, nor did the district court in determining, under AEDPA, that the state habeas court's decision was not unreasonable. Accordingly, *Satterwhite* has no effect on Bartee's *Cronic* claim.

Bartee cites *Williams v. Taylor*, 529 U.S. 362 (2000), but *Williams* involved an application of *Strickland*, not *Cronic*. *Williams*, similarly, has no bearing on Bartee's *Cronic* claims.

Finally, Bartee contends prejudice should be evaluated under the "standard of harm . . . applied when an attorney labored under a conflict of interest". Bartee cites *Perillo v. Johnson*, 79 F.3d 441, 448 (5th Cir. 1996), in support of this claim. *Perillo*, however, dealt with the *Cuyler* prejudice standard.

As noted, *supra*, jurists of reason would not debate the applicability *vel non* of *Cuyler*. Accordingly, this contention is similarly meritless.

In sum, Bartee has not established that jurists of reason would find the district court's resolution of his *Cronic* or *Cuyler* claims debatable.

4.

Bartee also seeks a COA to appeal the district court's denial of his *Strickland* claim for ineffective assistance of counsel. He maintains counsel was ineffective at his trial's guilt and punishment phases. In his state habeas proceeding, Bartee called four witnesses: (1) his father; (2) Callahan, Bartee's lead trial counsel; (3) the lead prosecutor from trial; and (4) a private investigator who assisted Bartee's attorneys at trial. He did not call Callahan's co-counsel from trial, nor did he ask Callahan about "the subjective thought processes and strategic reasoning underlying [his] decision-making . . . particularly with regard to counsel's decisions not to investigate potentially advantageous factual matters more thoroughly". *Bartee*, 574 F. Supp. 2d at 634. He similarly "introduced no testimony from any witness suggesting that any additional, admissible, exculpatory, mitigating, or favorable impeachment evidence existed at the time of . . . trial which could have been discovered . . . through more thorough investigation". *Id.*

The state habeas court considered, and rejected, Bartee's *Strickland* claim, concluding Bartee had failed to produce any evidence establishing: (1) what additional evidence would have been discovered had his counsel performed additional investigation; (2) "that defense counsel failed to work as a team"; (3) what uncalled expert witnesses were available and would have been helpful to the defense; (4) his counsel was using, or impaired by the use of, alcohol during the trial; (5) the reasons for his attorney's failure to move to exclude witnesses from the courtroom or that any witnesses were actually present during the trial;

and (6) the existence and availability of exculpatory or mitigating evidence not presented at trial.

In addition, the state habeas court rejected Bartee's claim that his counsel was deficient for failing to request a limiting instruction during the punishment phase, holding Bartee was not entitled to the instruction. It also rejected Bartee's claim that his counsel was deficient for failing to object to portions of the State's closing argument during the guilt phase and to evidence of the victim's good character, finding that, in the absence of evidence explaining counsel's failure to object, the record was insufficient "to overcome the strong presumption that counsel's performance was reasonable". *Ex Parte Bartee*, No. 97-CR-1659-W1, slip op. at 11 (Tex. Dist. 17 October 2005) (unpublished). It also rejected Bartee's claim that trial counsel was deficient for failing to make an opening statement during the penalty phase, noting that his counsel had requested, but the trial court prohibited, making the statement. Finally, the state habeas court rejected Bartee's claim that the "totality of the representation demonstrates that counsel was ineffective", noting the experience of his lead counsel and Bartee's own inconsistent statements about what happened on the night of the murder. *Id.* at 12.

The district court denied federal habeas relief on Bartee's *Strickland* claim, concluding, under AEDPA, that the state habeas court's resolution of Bartee's claim was not unreasonable. It found the "problem with petitioner's complaints of ineffective assistance in this cause [to be] the fact petitioner failed to present the state habeas court with any evidence, other than that contained in the petitioner's trial and appellate records" regarding Bartee's "counsels' strategic and tactical decision-making". *Bartee*, 574 F. Supp. 2d at 649. The district court concluded: "Absent some showing a counsel's subjective decision-making was objectively unreasonable, . . . it is almost impossible for a habeas corpus petitioner to overcome the presumption of reasonableness afforded his

counsel's strategic and tactical decisions under *Strickland*". *Id*. Ultimately, the district court concluded Bartee had "failed to carry his burden of proving the actions of his trial counsel . . . fell outside the wide range of objectively reasonable professional conduct . . . . [or to prove] he was 'prejudiced' within the meaning of *Strickland*". *Id*. at 652. As a result, it concluded that, under AEDPA, the state habeas court's rejection of Bartee's *Strickland* claim was not an unreasonable application of clearly established law.

Bartee urges us to grant a COA on this issue because the district court faulted him for not presenting evidence which, according to Bartee, "would have been rejected as not fairly presented" if it had been offered. To the extent he contends the district court faulted him for not presenting evidence he could not have offered, he misapprehends the district court's opinion. The district court did not reject Bartee's *Strickland* claim because he failed to advance an impermissible claim of ineffective assistance by his state-court *habeas* counsel, as Bartee seems to suggest. Although the district court did note Bartee's not having explained his state-court habeas counsel's failure to offer evidence establishing a *Strickland* claim, it did *not* suggest this lack of an explanation informed its denial of relief. On the contrary, as quoted *infra*, it concluded Bartee had failed to carry his burden of proof regarding either prong of *Strickland* (deficient performance and prejudice) such that the state habeas court's rejection of his *Strickland* claim was not unreasonable. The failure to explain these defects did *not* motivate the denial of federal habeas relief; the defects themselves did.

Rather than explain how jurists of reason would find the district court's conclusion debatable, Bartee repeats, essentially verbatim, the factual contentions made to the district court in support of his *Strickland* claim. He still fails to explain how any of the claimed deficiencies fell outside the range of objectively reasonable professional conduct. We need not determine whether

Bartee has established his entitlement to a COA based on these deficiencies, however, because he makes no meaningful attempt to explain how he was prejudiced by them. In the absence of some evidence of what prejudice Bartee suffered from the claimed errors, reasonable minds could not disagree about the district court's rejection of relief on Bartee's *Strickland* claim.

### III.

For the foregoing reasons, Bartee's requests for a remand and COA are DENIED.