United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 24, 2005**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

———————————————

No. 04-70009

———————————————

DONALD ANTHONY MILLER,

Petitioner-Appellee-Cross-Appellant,

versus

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellant-Cross-Appellee.

———————————————

Appeal from the United States District Court
for the Southern District of Texas

———————————————

Before BARKSDALE, GARZA, and DENNIS, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

At issue is whether to grant a certificate of appealability (COA) to Donald Anthony Miller on any of three claims for habeas relief denied by the district court. *See* 28 U.S.C. §§ 2253, 2254. Miller was convicted in Texas state court of capital murder and sentenced to death. Federal habeas relief was conditionally granted by the district court on one claim, but *only for sentencing*: that, pursuant to **Brady v. Maryland**, 373 U.S. 83 (1963), the State violated due process by withholding exculpatory evidence (**Brady**-claim). For all claims for which it denied relief, including the same **Brady**-claim as applied to guilt/innocence, the district court denied, *sua sponte*, a COA.

The State appeals; Miller seeks a COA in order to cross-appeal. For the latter, the following COA requests are now at issue.

First, Miller claims the district court erred by limiting to sentencing the granted habeas relief on his *Brady*-claim. He maintains the same evidence-withholding also entitles him to relief for the guilt/innocence phase of his trial.

In addition, Miller makes two ineffective assistance of counsel claims. He maintains his trial counsel provided ineffective assistance, violative of the Sixth Amendment, by failing to object: (1) to a non-testifying co-conspirator's confession admitted through testimony of another; and (2) to the State's closing argument.

A COA is **DENIED** for each of the three issues. A subsequent opinion will address the State's appeal from the habeas relief granted for sentencing, pursuant to the *Brady*-claim.

I.

In early 1982, Michael Mozingo and Kenneth Whitt, traveling furniture salesmen, were approached by Miller, Eddie Segura, and Danny Woods, who feigned interest in purchasing furniture. After Mozingo and Whitt were lured to Segura's house to deliver the furniture, they were robbed, bound, and gagged. Miller, Segura, and Woods drove Mozingo and Whitt to Lake Houston in Harris County, Texas, where they were murdered by Miller and Woods.

2

In October 1982, Miller was convicted for capital murder, and sentenced to death, for murdering Mozingo while in the course of committing, and attempting to commit, aggravated robbery. Segura testified against Miller; Woods did not testify. (Before Miller's trial, Woods had pleaded guilty to murder; Segura, to aggravated robbery. Woods was sentenced, before Miller's trial, to two life sentences. Segura was sentenced, after Miller's trial, to 25 years in prison.)

The Texas Court of Criminal Appeals affirmed. *Miller v. State*, 741 S.W.2d 382 (Tex. Crim. App. 1987) (en banc). The Supreme Court denied a writ of certiorari. *Miller v. Texas*, 486 U.S. 1061 (1988).

Miller requested state habeas relief, presenting numerous claims. The state district court entered findings of fact and conclusions of law and recommended denial of relief on each claim. *Ex Parte Miller*, No. 350303-A (232d Dist. Ct., Harris County, Tex. 7 May 1997). The Court of Criminal Appeals adopted those findings and conclusions and denied relief. *Ex Parte Miller*, Application No. 36140-01 (Tex. Crim. App. 1998) (unpublished order).

In February 1999, Miller requested federal habeas relief, presenting five claims. Following an evidentiary hearing, the district court conditionally granted habeas relief for the *Brady*-claim, but only for the punishment phase. *Miller v. Johnson*, H-99-0405 at 24 (S.D. Tex. 2 February 2004) (*USDC Opn*.). For the other

claims, including the **Brady**-claim as applied to guilt/innocence, the district court granted the State's summary judgment motion and denied, *sua sponte*, a COA for those claims. The district court stayed its judgment pending appeal.

## II.

At issue is only the preliminary question of whether Miller can cross-appeal. For that purpose, three COA requests are at hand. The state appeals the conditional habeas relief and opposes Miller's COA requests. With this opinion, we consider – and deny – the COA requests. In a subsequent opinion,we will consider the remaining issue: the State's appeal from the relief granted for sentencing, based on the **Brady**-claim.

Miller's 28 U.S.C. § 2254 habeas petition is subject to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See*, *e.g.*, **Penry v. Johnson**, 532 U.S. 782, 792 (2001). Under AEDPA, Miller may not appeal the denial of habeas relief on an issue unless he first obtains a COA from either the district, or this, court. 28 U.S.C. § 2253(c); FED. R. APP. P. 22(b)(1); **Slack v. McDaniel**, 529 U.S. 473, 478 (2000). Under Federal Rule of Appellate Procedure 22(b)(1), the district court must first decide whether to grant a COA request before one can be requested here.

4

In ruling on Miller's habeas petition, the district court denied, *sua sponte*, a COA for each issue for which it denied relief.

This COA requirement applies to the issue Miller has labeled only a cross-appeal, and for which he does not request a COA. Nevertheless, under Federal Rule of Appellate Procedure 4(a)(3), a notice of cross-appeal is treated as a notice of appeal; and, under Federal Rule of Appellate Procedure 22(b)(2), a notice of appeal constitutes a COA request, if no separate request is filed. (The State correctly responds to the issue as a COA request.) Miller also seeks a COA on two ineffective assistance of counsel (IAC) claims, based on trial counsel's failing to object: (1) to introduction of a non-testifying co-conspirator's extra-judicial confession admitted through testimony of another; and (2) to the State's closing argument. (Miller's statement of the issues in his COA request identifies as a ground for COA the denial of his Sixth Amendment rights concerning the limited cross-examination of the key prosecution witness, Segura. Miller did *not* brief that issue. Instead, he briefed the second IAC claim listed above (which is *not* identified as a ground for COA in Miller's statement of issues). Accordingly, we do *not* address the cross-examination issue.)

To obtain a COA, Miller must "make a substantial showing of the denial of a constitutional right". 28 U.S.C. § 2253(c)(2); *see* ***Miller-El v. Cockrell***, 537 U.S. 322, 336 (2003); ***Slack***, 529 U.S. at 483. In order to do so, Miller must demonstrate "reasonable

5

jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further". *Miller-El*, 537 U.S. at 336 (quoting *Slack*, 529 U.S. at 484). In determining whether to grant a COA, we are limited, *inter alia*, "to a threshold inquiry into the underlying merit of [Miller's] claims". *Id.* at 327. "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." *Id.* at 336. Instead, our analysis "requires an overview of the claims in the habeas petition and a general assessment of their merits". *Id.* This being a death penalty case, "any doubts as to whether a COA should issue must be resolved in [Miller's] favor". *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir.), *cert. denied*, 531 U.S. 966 (2000).

For purposes of the requisite threshold-inquiry, we are mindful that, in ruling on the merits, the district court was required to defer to the state court's adjudication of Miller's claims on both questions of law and mixed questions of law and fact, unless the state court's "decision ... was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court". 28 U.S.C. § 2254(d); *see Hill v. Johnson*, 210 F.3d 481, 488 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). A state court's decision is contrary to clearly established federal law if it "reaches a legal

6

conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts". *Miniel v. Cockrell*, 339 F.3d 331, 337 (5th Cir. 2003), *cert. denied*, 540 U.S. 1179 (2004).

Likewise, for this threshold-merits-inquiry, we are mindful that, in ruling on the merits, the district court was required to defer to the state court's factual findings unless they "resulted in a decision that was based on an unreasonable determination of the facts in [the] light of the evidence presented in the State court proceeding". 28 U.S.C. § 2254(d)(2). The state court's factual findings are "presumed to be correct", and Miller has "the burden of rebutting the presumption of correctness by clear and convincing evidence". 28 U.S.C. § 2254(e)(1).

Finally, for our COA threshold-merits-inquiry, we must consider the elements, discussed *infra,* for the underlying *Brady* and IAC claims. Obviously, the COA requests must be considered against the backdrop of those elements.

## A.

Miller's *Brady*-claim was *not* raised in state court. Following an evidentiary hearing, the district court ruled the claim was *not* procedurally barred because the cause and prejudice exception was satisfied; the suppressed evidence was not reasonably available to Miller, and the suppression prejudiced him for sentencing. *USDC*

7

***Opn.*** at 20, 24. For purposes of ruling on this COA request, we do *not* address whether the ***Brady***-claim is procedurally barred. Obviously, were we to hold now that it is barred, that holding would resolve the merits issue being appealed by the State, an issue that awaits resolution in our subsequent opinion on the habeas relief granted Miller for sentencing based on the ***Brady*** claim. As discussed *infra*, even assuming for purposes of this opinion that the ***Brady***-claim is *not* procedurally barred, a COA for that claim on guilt/innocence is denied.

The well-known elements for a ***Brady***-claim are: (1) the prosecutor suppressed evidence, (2) favorable to the defense, (3) and *material* to guilt or punishment. ***Brady,*** 373 U.S. at 87. Evidence is material if there is "a *reasonable probability* that, had the evidence been disclosed to the defense, the result of the proceeding would have been different". ***United States v. Bagley***, 473 U.S. 667, 682 (1985) (emphasis added). Concerning Miller's guilt/innocence-***Brady***-claim, at issue for COA purposes is the district court's ruling, which restated the test for ***Brady***—materiality in a different, but similar, form. It ruled that, even if the State had not suppressed evidence, "there is a *reasonable probability* that the outcome of the guilt-innocence phase would *not* change". ***USDC Opn***. at 24 (emphasis added).

The murders occurred in February 1982; Miller was convicted that October. During a pre-trial motion, the prosecutor argued

8

that *Brady* did not require his disclosing impeachment evidence, but only evidence that was exculpatory to Miller's guilt. The trial court did not require disclosure of additional evidence. Miller contends the State suppressed three items of material evidence: (1) statements by Ray McCall in 5 and 20 May 1982 interviews with the State; (2) statements by Archie Morris in a 5 May 1982 interview with the State; and (3) affidavits of four persons who did not testify.

McCall, the brother of Segura's then girlfriend, Monica McCall, visited Miller's home the night of the murders. Outside Miller's presence, Segura and Woods described the night's events to McCall. Later that night, Miller paid McCall to go to the murder site, in order to confirm the bodies were still there. McCall was unable to find the bodies, but returned with Miller and found them.

Investigator's notes from interviews with McCall were suppressed. In notes from the 5 May interview, an investigator acknowledged McCall's not having told the truth on prior occasions. The district court found these notes raised questions about McCall's credibility and were important because McCall corroborated testimony by Segura, who had been present at the murders and was the State's key witness. *USDC Opn.* at 22. In the 20 May interview, however, McCall stated that, on the night of the murders, Woods and Segura said nothing about them, but admitted only to the robbery. The district court noted McCall's statements

9

during this interview differed from his trial testimony and could have been used for impeachment purposes. *Id.*

Morris (Ray and Monica McCall's grandfather) was the source for the .38 caliber handgun used in the murders. Prosecutor's suppressed notes include Morris' statement that he owned only a .22 caliber handgun and had *not* given it to Miller. At trial, however, Morris testified that, just prior to the murders, Miller had borrowed from him the .38 caliber handgun used in the murders. While not specifically addressing Morris' contradictory statements, the district court found the suppressed evidence undermined Segura's credibility, as well as the value of McCall and Morris' corroborating testimony. *Id.* at 24.

In the suppressed affidavits from four who did not testify (Robert White, Tammie Jones, Tommy Holsinger, and Melissa Spears), each affiant told police they overheard Woods brag about the murders. The district court found the affidavits indicated Woods, *not Miller*, killed both victims and that Segura was armed. *Id.* at 23.

Referring primarily to McCall and Morris' statements, and applying *Brady's* above-described three-part test, the district court ruled: (1) the State withheld evidence; (2) it was favorable to Miller; and (3) it was material, *but only to the penalty phase of Miller's trial*. *USDC Opn.* at 26. In its earlier ruling on the prejudice element for the procedural bar, the district court held:

10

although Miller's "complicity in the killings is not seriously disputed", Miller "challenge[d] his portrayal as the ringleader and shooter, a role that warranted conviction for capital murder and imposition of the death sentence". *Id.* at 23. In ruling on the *Brady*-claim, the district court noted: "The analysis for [*Brady*-] materiality tracks that of prejudice" when ruling on whether to apply a procedural bar. *Id.* at 26. It held: "the newly disclosed evidence raises significant doubt about the outcome of the trial, particularly the punishment assessed"; and "the State's refusal to disclose material evidence ... vitiated the sentence imposed". *Id.* In the end, for Miller's *Brady*-claim, the district court granted conditional habeas relief for sentencing, but *not* guilt/innocence. *Id.* at 42.

According to Miller, McCall and Morris' suppressed statements were inconsistent with their trial testimony; and, had they been disclosed, they could have been used to impeach them. Miller maintains the four affidavits raise doubts about his being the shooter because they raise the possibility that Segura was the shooter instead. Along this line, Miller seems to contend that all of the suppressed evidence relied upon by the district court in granting conditional habeas relief for sentencing is material to guilt/innocence. He asserts: (1) evidence, such as Morris' prior inconsistent statement, would have impeached Morris' testimony that Miller obtained the .38 caliber handgun from him just before the

11

murders; and (2) evidence, particularly White's affidavit, (a) suggested Miller did not shoot the handgun and (b) impeached Detective Clampitte's testimony suggesting that affidavits by four individuals supported Miller's being the shooter.  According to Miller, with the testimony of Morris and Detective Clampitte impeached, the State would have had to rely primarily on testimony of Segura and McCall (both of whom had obvious reasons to implicate Miller, rather than themselves) that Miller shot Mozingo.  Miller maintains it is reasonably probable that, had the evidence been produced, the jury would have questioned McCall and Segura's motives and credibility enough to find Miller did not shoot Mozingo, nor should he have anticipated his death, as discussed below.  He contends therefore, it is reasonably probable the jury would not have found him guilty of the capital murder of Mozingo.

In this regard, consistent with the district court's earlier-quoted ruling restating the test for **Brady**-materiality, Miller claims the district court required him to negate evidence showing there is a reasonable probability the guilt/innocence *outcome would have remained the same*, rather than requiring him to demonstrate by a preponderance of the evidence a reasonable probability the outcome *would have been different*, as required by **Kyles v. Whitley**, 514 U.S. 419 (1995) (requiring demonstration of reasonable probability that result of proceeding would have differed had

12

evidence been disclosed). Miller seeks a remand to allow the district court to apply the correct standard.

According to Miller, when the correct materiality standard is applied, suppression of evidence that he was not the shooter would have been material under Texas' law of the parties. *See* TEXAS PENAL CODE § 7.02(b) (co-conspirators guilty of crimes committed during conspiracy if result should have been anticipated). Miller contends: had the jury been presented with evidence that Woods and Segura shot the victims, it is reasonably probable at least one juror would not have found that the State proved Miller caused Mozingo's death; and, because the State charged Segura only with aggravated robbery, the jury would not have found unanimously that Miller should have anticipated Mozingo's death.

In opposing a COA, the State makes the following response. Reasonable jurists could not debate the ruling that the suppressed evidence is *not* material to guilt/innocence. Even if Miller's trial counsel had been aware of Morris' prior inconsistent statement and had impeached him, there was ample other evidence supporting Miller's guilt. McCall and Segura testified consistently to Miller's involvement in the robbery and shootings. Likewise, the four affidavits were not material. The affiants heard Woods bragging about the crimes; in many ways, the affidavits support Miller's guilt and do not contradict Segura and McCall's testimony. Simiarily, given the extensive evidence of Miller's

13

guilt, he cannot demonstrate McCall's suppressed statement is material for guilt/innocence. The State's final assertion is that even assuming the suppressed evidence was material (*for sentencing purposes*) to finding Miller *guilty as a direct participant*, it is not material (*for guilt/innocence purposes*) to finding him *guilty as a party*. *See* TEXAS PENAL CODE § 7.02.

We agree. Again, for **Brady** purposes, evidence is material if there is a *reasonable probability* that, had the evidence been disclosed, the result would have been different. **Bagley**, 473 U.S. at 682. If, during a conspiracy to commit a felony, another is committed, even without intent to commit that other felony, all conspirators are guilty under Texas law of the committed felonies if the result was one that "should have been anticipated as a result of the carrying out of the conspiracy". TEXAS PENAL CODE § 7.02(b). Given the testimony by Segura and McCall, among others, reasonable jurists could not debate that the suppressed evidence is not *material*, under **Brady**, to Miller's participation in the robbery conspiracy. Given the uncontroverted, overwhelming evidence of his involvement in that conspiracy and the nature of the robbery, reasonable jurists could not debate that: (1) Miller should have anticipated Mozingo and Whitt's deaths; and (2) under Texas Penal Code § 7.02(b), the suppressed evidence is *not* material to Miller's being found guilty for the capital murder of Mozingo. Restated, reasonable jurists could not debate that there is no reasonable

14

probability that the guilt/innocence verdict would have been different, had the evidence been produced.

B.

The other two COA requests are premised on IAC claims. As discussed, a threshold-merits-inquiry is part of the calculus for deciding whether to grant a COA; part of that inquiry involves considering the elements for the underlying claim for which a COA is requested. In order to have been granted habeas relief on his IAC claims (by either the state, or district, court), Miller was required to demonstrate *both*: (1) "counsel's performance was deficient"; *and* (2) "the deficient performance prejudiced [his] defense". *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Counsel's performance is deficient if it falls "below an objective standard of reasonableness". *Id.* at 688. In that regard, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance". *Id.* at 689. Deficient performance *vel non* is judged against the law existing at the time of the claimed IAC. *Id.* at 689-90.

To establish prejudice, Miller was required to demonstrate (similar to the *Brady*-materiality requirement) "there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different". *Id.* at 694. "A reasonable probability is a probability sufficient

15

to undermine confidence in the outcome." *Id.* As discussed below, each COA request is resolved by addressing the prejudice prong.

1.

The first IAC claim concerns not objecting to the introduction, through McCall's testimony, of Woods' extra-judicial confession to McCall on the night of the murder and outside Miller's presence. (As discussed, McCall visited Miller's home the night of the murders and was paid by Miller to search for the bodies that had been left at the lake; when McCall couldn't find them, he returned to the murder scene with Miller, where they located them.) McCall testified at length that, while he was at Miller's house, Woods confessed to him that Woods, Segura, and Miller committed the murders. In this regard, Segura participated in most, if not all, of the conversation. (Again, Segura testified.) Part of McCall's testimony follows.

> Q. Did *Danny Woods tell you* about any other shots being fired after he fired with the shotgun?
>
> A. Yeah, he said that Donny [Miller] had shot them with a pistol.
>
> Q. And did he tell you how many times Donny Miller shot his pistol?
>
> A. No, he didn't specify the times.
>
> Q. But, during that initial conversation, he [Woods] did indicate to you that he shot the shotgun and that Miller shot the pistol, is that correct?
>
> A. Correct.

16

> Q. *And at that time, Mr. McCall, did Eddie Segura agree with this recitation of facts that Danny Woods was giving to you?*
>
> A. *Right.*

(Emphasis added.)

In seeking a COA, Miller claims: this use of Wood's confession violated Miller's Sixth Amendment Confrontation Clause rights; and, concomitantly, failing to object on that ground constituted IAC. Miller urges application of *Lee v. Illinois*, 476 U.S. 530 (1986), for the proposition that the Confrontation Clause limits evidence the State may introduce based on exceptions to the hearsay rule.

In opposing a COA, the State, relying upon *Saddler v. State*, 320 S.W.2d 146 (Tex. Crim. App. 1959), contends that Woods' statements are not inadmissable hearsay because they are declarations of one conspirator made in furtherance of the conspiracy. Because, according to the State, Woods' statements were admissible, failure by Miller's counsel to object to their introduction could not be deficient performance. In the alternative, the State contends that, even if counsel's performance was deficient, there was no prejudice, given the overwhelming evidence against Miller.

The state habeas court held Miller's counsel was not ineffective for failing to object to Woods' statements, presented through McCall, because they were admissible as statements against

17

interest.  The district court relied upon a different basis, ruling: "McCall's testimony does not violate the Confrontation Clause because the other co-defendant, Segura, testified to essentially the same facts".  *USDC Opn.* at 35.  The district court reasoned that, even if there were error, it would have been harmless, because Miller had the opportunity to cross-examine Segura, one of the two witnesses who testified to the same information.  *Id.*  (For deficient performance *vel non*, the district court refused, properly, to apply *Lee*, because it was decided after Miller's trial.  *Id.* at 33 n.8.)

Extra-judicial confessions can violate the Confrontation Clause because there is no opportunity to cross-examine the declarant. *Cf. Crawford v. Washington*, 541 U.S. 36 (2004) (out-of-court testimonial statements barred by Confrontation Clause unless witness is unavailable and defendant had opportunity to cross-examine).  For example, in *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court found a Confrontation Clause violation, despite a limiting jury instruction, when a co-defendant's incriminating extra-judicial confession was admitted through an investigator's testimony.

The primary function of the Confrontation Clause is to protect the right of cross-examination, *Douglas v. Alabama*, 380 U.S. 415, 418 (1965); and, of course, one of the functions of cross-examination is to allow the jury to assess the credibility of the

18

witness.  *See **Mattox v. United States***, 156 U.S. 237, 242–43 (1895).
The district court noted:  "Despite spanning numerous pages, the
transcript of [Woods'] confession is remarkably devoid of even a
single objection by [Miller's] counsel".  **USDC Opn.** at 34.
Similarly, it was "troubled by trial counsel's failure to object to
the prosecutor's elicitation of Woods' confession ...." ***Id.*** at 36.

As noted, and notwithstanding its expressed concerns about
counsel's performance, the district court held there was no
Confrontation Clause violation because Miller was able to cross-
examine another witness, Segura, who provided similar testimony.
Presumably, for this reason, the district court found counsel's
performance was not deficient for failing to object to Woods'
confession.  In any event, we need not address deficient
performance and prejudice *vel non*, because this COA request can be
resolved by examining the prejudice prong.  *See **Strickland***, 466
U.S. at 687 (must show *both* deficient performance and prejudice).
Again, the district court ruled that, even if admission of Woods'
confession was error, it was harmless, because Miller was able to
cross-examine  Segura,  whose  testimony  corroborated  Woods'
confession.

Miller does *not* address prejudice, however.  Instead, he seeks
a remand to district court for a determination of prejudice.
Arguably, the failure to brief the prejudice prong constitutes
abandonment of this COA request.  In any event, based on Miller's

19

*Brady*-claim COA request, the following contention appears to be implied:  had Woods' confession not been admitted, Miller would not have been found guilty and, in the alternative, certainly would not have received the death penalty.

Reasonable jurists would not debate that, in the light of the other overwhelming evidence against Miller, there is not a *reasonable probability* that:  (1) the determination of guilt would have changed; and (2) Miller would not have received the death penalty.  For example, McCall testified that Miller:  admitted to him that he shot the two victims; had McCall go to the murder scene; and had McCall return to Morris the handgun used in the murders.

2.

The other IAC claim concerns failing to object on two grounds to the State's closing argument in the punishment phase.  Relying on **Payne v. Tennessee**, 501 U.S. 808 (1991), and apparently addressing **Strickland's** prejudice prong, Miller maintains juries in death penalty cases must be permitted to view the defendant as a uniquely individual human being. (The district court correctly refused to apply **Payne** to the deficient performance prong because **Payne** was decided "nearly 10 years after the trial".  **USDC Opn.** at 36 n.13.)  Miller contends:  (1) the prosecutor's victim-impact argument (a) was not based on evidence presented at trial and (b) deprived the jury of the ability to view Miller as an individual;

20

and (2) the closing argument invited the jury to compare Miller's worth to the victims' in deciding whether to impose the death penalty, a type argument that was, according to Miller, condemned by the Supreme Court in *Zant v. Stephens*, 462 U.S. 862 (1983).

In opposing a COA, the State asserts: the challenged comments were permissible; and Miller's reading of *Payne* is overly broad. In the alternative, the State contends that, even if the comments were improper, they did not rise to a level that rendered the proceeding fundamentally unfair. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (relevant question is whether prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process"). The State maintains: *Payne's* relevant holding is that the Eighth Amendment does not bar *per se* victim-impact testimony or prosecutorial argument based on it, a holding that supports the State's, rather than Miller's, position, *Payne*, 501 U.S. at 824; and *Payne* holds that a prosecutor may argue victim impact to counteract mitigating evidence presented by a defendant, as was done by Miller, *id.* at825. The State asserts Miller, for COA purposes, has not sufficiently demonstrated as unreasonable, under AEDPA, the state court's decision that the prosecutor's arguments did *not* deny Miller his due process right to a fair trial.

Victim-impact evidence that is "so unduly prejudicial that it renders the trial fundamentally unfair" deprives a capital

21

defendant of due process. *Payne*, 501 U.S. at 825. As discussed *infra*, reasonable jurists would not debate that counsel's performance was *not* prejudicial. Accordingly, for COA purposes, we need not address whether that performance was deficient.

On direct appeal, concerning due process *vel non*, the Texas Court of Criminal Appeals examined the State's punishment phase closing argument; and, "while [it found] that some of [the comments] might be considered highly improper ... they were not so prejudicial as to ... deprive[] [Miller] of a fair and impartial trial". *Miller*, 741 S.W.2d at 393. For Miller's state habeas IAC claim, based on counsel's failure to object to those comments, the state habeas court's finding, which the Court of Criminal Appeals adopted, was that Miller failed to demonstrate counsel's failure to object was either deficient performance or prejudicial.

a.

The first of the two challenged segments follows:

> And think to yourself as you look at this and think of this case; what does Marsha Mozingo tell her kids? "Mommy, why isn't Daddy here? Mommy, is Daddy ever going to come back? Mommy, why did that bad man have to kill Daddy? Mommy, my birthday is coming up, will Daddy be there? Mommy, where does somebody go after he's been killed? Mommy, help me understand; Mommy, tell me the truth, Mommy, are there very many people in the world like Donald Miller? Mommy, will anyone else ever have to die because of Donnie Miller?"

The district court stated: the prosecutor *speculated* about how one of the victims' wives would explain the killing to their

22

child, despite having elicited no testimony about the impact of the killings on the families. **USDC Opn.** at 36. Although it characterized the comments as "immature and constitut[ing] pandering to the victims' families", the district court held they did not violate **Strickland's** "but for" standard. **Id.** (Again, **Strickland** requires, *inter alia*, showing "there is a reasonable probability that, *but for* counsel's unprofessional errors, the result of the proceeding would have been different". **Strickland**, 466 U.S. at 694. (emphasis added).)

Although the district court stated there was no evidence about the impact of Mozingo's death on his family, there was testimony from which the impact could reasonably be inferred by the jury. Segura testified that, while Mozingo was in Segura's car en route to being murdered, Mozingo asked Woods, Miller, and Segura to look at the picture of his family in his wallet. Likewise, McCall testified: Segura told him Mozingo asked the men not to kill him "because he had a wife and a kid at home". And Mozingo's wife testified they had two children.

In this regard, there was sufficient evidence about Mozingo's family for the jury to consider the victim impact argument. Reasonable jurists would not debate the ruling that, had these comments not been made, there is no reasonable probability that the death penalty verdict would have been different.

b.

Part of the other challenged comments follow:

Is it going to be your vote for saving the
life of a murderer or saving the innocent life
of a person such as Kenneth Whitt and Michael
Mozingo? ... I would like for you, before
anybody votes no to this case, make sure you
understand what it would be like for some
victim in the future that might be with this
Defendant in the future, under the same or
similar circumstances, put yourself in their
position and decide whether you feel
conscientiously you could say no to the
questions knowing you would be risking some
other person's life ....

In denying habeas relief on the challenged comments, the district court noted the context of the above-quoted comments, but did *not* address them specifically. **USDC Opn**. at 35. As discussed above, the district court held the closing argument was not prejudicial for **Strickland** purposes. **Id.** at 36. Again, based on this record, reasonable jurists could not debate that, had these comments not been made, there is no reasonable probability that the death penalty verdict would have been different.

The same conclusion is compelled when the combined effect of the contested comments is considered. Reasonable jurists would not debate that there was *no* **Strickland** prejudice.

III.

For the foregoing reasons, a COA is **DENIED** for each of the three COA requests. A subsequent opinion will address the State's

24

appeal from the conditional habeas relief granted Miller for his *Brady*-claim, as it concerns sentencing.

*COA DENIED*

25