United States Court of Appeals
Fifth Circuit

**F I L E D**

April 7, 2006

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 05-70003

ERIC DEWAYNE CATHEY,

Petitioner-Appellant,

versus

DOUG DRETKE, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before WIENER, BENAVIDES and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:[*]

Petitioner Eric Dewayne Cathey, convicted of capital murder in Texas and sentenced to death,

requests from this court a Certificate of Appealability ("COA") pursuant to 28 U.S.C. § 2253(c)(2).

Cathey's application to this court addresses the single issue of whether the district court erred in

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

denying habeas relief because the jury was not told about a key witness's understanding that he had a "promised deal limiting his sentence." For the reasons set forth below, we deny the COA.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Eric Dewayne Cathey was one of six men who planned to rob twenty year old Christina Castillo and her boyfriend in order to take drugs and money that the men believed they had. Trial testimony by one of the six men, Lionel Bonner, revealed that in September 1995 the men waited outside Castillo's apartment and, when she arrived, Cathey grabbed her by the throat and held her at gunpoint. The men forced her into a car and, in two vehicles, the group took her to the house of Cathey's mother. Bonner indicated that Cathey was the only one of the six that was armed. Castillo's hands and feet were secured with duct tape and the men interrogated her about drugs and money. She denied having any. The men beat and kicked the ninety seven pound young woman for fifteen minutes, even though she continued to deny having drugs or money and she told them that she was pregnant.

They decided to abandon Castillo and took her to a desolate location in a low-income, high-crime area. As Bonner and some of the men were about to leave the area in one of the vehicles, Bonner saw Cathey reach toward Castillo outside the other vehicle. When they drove away, Bonner heard gunshots. Bonner also testified he saw Cathey later that evening and Cathey said "I shot her," and told him not to tell anyone. A few days later, someone found Castillo's body while collecting aluminum cans. Three cartridge casings were found near her body. Two to four weeks later, Bonner asked Cathey if he really shot the girl. Cathey said yes and said he did not know why he shot her. Other evidence indicated that in October 1995 Cathey was in possession of the weapon that a

2

Houston Police Department criminologist identified as the same weapon that had fired the three cartridge cases that had been found near Castillo's body.

In March 1997, Eric Dewayne Cathey was convicted by a jury of capital murder for the murder of Christina Castillo and sentenced to death. On direct appeal, the Texas Court of Criminal Appeals affirmed the conviction and sentence. *Cathey v. Texas*, 992 S.W. 2d 460 (Tex. Crim. App. 1999). The United States Supreme Court denied Cathey's petition for a writ of certiorari. *Cathey v. Texas*, 528 U.S. 1082 (2000). Thereafter, Cathey filed an application for state habeas relief that included the claims asserted in the instant petition. On January 29, 2003, the trial court adopted the Respondent's Proposed Findings of Fact, Conclusions of Law and ordered the clerk of court to send the record and transcripts to the state court of criminal appeals along with its recommendation that habeas relief be denied. The Texas Court of Criminal Appeals adopted the trial court's findings and conclusions, and denied Cathey's application on April 2, 2003. *Ex Parte Cathey*, No. 55,161-01 (Tex. Crim. App. Apr. 2, 2003) (unpublished).

Cathey filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in federal district court on April 2, 2004, asserting seven grounds for relief. The respondent, Douglas Dretke ("the Director"), moved for summary judgment on all of Cathey's claims, and the district court granted that motion in its Memorandum Opinion and Order dated December 23, 2004. The district court also entered a final judgment that denied Cathey's § 2254 petition and, sua sponte, denied issuance of a Certificate of Appealibility (COA) on December 23, 2004.

Cathey now requests a COA from this court, asserting an alleged violation of *Brady v. Md.*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972) ("*Brady* claim").

## II. STANDARD OF REVIEW

3

This case is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") because Cathey filed his § 2254 habeas petition in the district court after the April 24, 1996 effective date of the AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Under the AEDPA, a petitioner must obtain a COA before he can proceed to appeal the dismissal or denial of a § 2254 habeas petition. 28 U.S.C. § 2253(c)(2). A COA is granted only if the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make this showing, Cathey must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("[P]etitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."); *Miller v. Dretke*, 404 F.3d 908, 913 (5th Cir. 2005).

In determining whether a COA should be granted, "we are mindful that, in ruling on the merits, the district court was required to defer to the state court's adjudication of [Cathey]'s claims on both questions of law and mixed questions of law and fact." *Id.* Under the AEDPA's required deferential standard,

> an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Morrow*, 367 F.3d at 313; 28 U.S.C. § 2254(d). A state court's decision is an unreasonable application of established law when it is "objectively unreasonable, and is contrary to established law

4

when it "reaches a legal conclusion in direct opposition to a prior decision of the United States Supreme Court or when it reaches a different conclusion than the United States Supreme Court on a set of materially indistinguishable facts." *Riddle v. Cockrell*, 288 F.3d 713, 716 (5th Cir. 2002). "Alternatively, a state court 'unreasonably applies' clearly established federal law if it correctly identifies the governing precedent but unreasonably applies it to the facts of a particular case." *Morrow*, 367 F.3d at 313. "[F]ederal habeas relief is only merited where the state court decision is both incorrect and objectively unreasonable." *Id.* Moreover, in deciding Cathey's petition for habeas relief, the district court had to be mindful that state court findings of fact are presumed to be correct unless Cathey rebutted this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Only after a COA is granted will a reviewing court examine whether the trial court's determination was proper regarding the alleged undisclosed tacit agreement. *Cf. Miller-El*, 537 U.S. at 341.

> In determining whether to grant a COA, we are limited, inter alia, to a threshold inquiry into the underlying merit of [Cathey's] claims. This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. Instead, our analysis requires an overview of the claims in the habeas petition and a general assessment of their merits. This being a death penalty case, any doubts as to whether a COA should issue must be resolved in [Cathey's] favor.

*Miller*, 404 F.3d at 913 (citations and internal quotation marks omitted); *see also Morrow v. Dretke*, 367 F.3d 309, 313 (5th Cir. 2004) ("The COA determination requires an overview of the claims in the habeas petition and a general assessment of their merits but not full consideration of the factual or legal bases adduced in support of the claims." (citations and internal quotation marks omitted)). Accordingly, "[a]t this stage . . . we only ask whether the district court's application of AEDPA deference to [Cathey's *Brady*] claim was debatable amongst jurists of reason." *Miller-El*, *id.*

5

III. DISCUSSION

Of the seven constitutional violations that Cathey's asserted in his petition to the federal district court, the only one for which he requests a COA is the *Brady* claim that his constitutional rights were violated because the prosecutor failed to disclose information about an alleged tacit agreement among Bonner, Williams, and the State of Texas.

A. Applicable Law

"A prosecutor must disclose evidence favorable to an accused if it 'is of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Morrow*, 367 F.3d at 316 (quoting *United States v. Agurs*, 427 U.S. 97, 108 (1976). Prosecutorial suppression of evidence favorable to the defense "violates due process where the evidence is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Johnson v. Dretke* 394 F.3d 332, 336 (5th Cir. 2004) (quoting *Brady*, 373 U.S. at 87).

Resolution of Cathey's COA application requires a preliminary, though not definitive, consideration of the three-step framework mandated by *Brady* and reaffirmed in later precedents. *Cf. Miller-El*, 537 U.S. at 338. "The[se] well-known elements for a *Brady*-claim are: (1) the prosecutor suppressed evidence, (2) favorable to the defense, (3) and material to guilt or punishment." *Miller*, 404 F.3d at 914 (citing *Brady*, 373 U.S. at 87). The instant COA request must be considered against the backdrop of these elements. *Id.* at 913.

"[F]or Brady purposes, evidence is material if there is a reasonable probability that, had the evidence been disclosed, the result would have been different." *Miller*, 404 F.3d at 916 (citing *United States v. Bagley*, 473 U.S. 667, 682 (1985)); *United States v. Webster*, 392 F.3d 787, 798 (5th Cir. 2004). "[A] reasonable probability is one sufficient to undermine confidence in the outcome." *Miller*

6

*v. Dretke*, 431 F.3d 241, 251 (5th Cir. 2005) (citing *Kyles v. Whitley*, 514 U.S. 419, 433- 34 (1995)). At issue is whether given the non-disclosure of material evidence the verdict is less worthy of confidence, not whether the result would have been different. *Morrow*, 376 F.3d at 317. "If the evidence provides only incremental impeachment value, it does not rise to the level of Brady materiality." *Miller*, 431 F.3d at 251.

B. Analysis

    1. *State Habeas Court Findings of Fact and Conclusions of Law*

    In its decision on Cathey's request for habeas relief, the Texas trial court adopted, inter alia, the following factual findings regarding the alleged undisclosed agreement: Lionel Bonner pled guilty to aggravated kidnaping pursuant to a written plea agreement that indicated there was no plea bargain regarding sentencing and that Bonner's punishment was to be determined by the trial court. Bonner stated during his guilty plea colloquy that he had been promised nothing and had made or received no deals concerning his sentence, and that he was putting the sentencing decision in the hands of the court. The prosecutor also stated there was no agreement with Bonner for a certain number of years. Bonner testified that originally he had been charged with capital murder, that his lawyer reached an agreement to reduce his charge to aggravated robbery, and that the trial court would make his sentencing decision. The prosecutor had expressed his opinion that Bonner would be sentenced at the lower end of the spectrum, but there had been no promise or agreement about a "cap" to be applied to Bonner's statutory sentencing range. In Bonner's motion for new trial,[1] the trial court

---

[1] Bonner was sentenced to imprisonment for not more than thirty years. Bonner filed a motion for new trial pursuant to which testimony and other evidence was adduced. In his motion, Bonner alleged that he had an unwritten "understanding" that the prosecutor agreed that Bonner's sentence would be ten years probation, or imprisonment for not more than about ten years.

stated that Bonner had not told the truth and that it found no reason to believe that there was any kind of deal between Bonner and anyone else.

The state habeas trial court also adopted, inter alia, the following conclusions of law: Based on Bonner's sworn testimony, Bonner had no deal with the State in exchange for his testimony. Based on Bonner's lack of credibility in Bonner's motion for new trial, Cathey failed to show that there was an agreement that should have been disclosed to the jury. Alternatively, any alleged failure to disclose an agreement with Bonner was not material because trial counsel thoroughly cross-examined Bonner about the benefits he received from the State in return for his testimony, and the jury was free to accept or reject any portion of his testimony based on his possible motives.

2. *Federal Habeas Court Findings of Fact and Conclusions of Law*

The district court reviewed Cathey's petition for federal habeas relief and noted that Cathey did not dispute that the prosecution disclosed the fact that Bonner's guilty plea ensured that he would not be charged with a capital offense. Nevertheless, Cathey alleged that the prosecution also entered into an "understanding" about Bonner's ultimate sentence. Cathey supported this claim with affidavits from Bonner and Cathey's trial counsel, Connie Williams. The district court also noted that other evidence suggested that no tacit agreement existed between Bonner and the prosecution.

The district court determined that Cathy failed to show that the prosecution suppressed material because, at best, the evidence suggests that Bonner and/or his counsel held a subjective belief that he had entered into an agreement with the prosecution with no evidence that an actual sentencing agreement existed on paper or through discussions. The district court (a) concluded that, even if Bonner and his counsel believed there was an agreement, that belief does not make it so, and (b)

8

found that Cathey failed to show that the relevant parties entered into any plea agreement beyond that to which Bonner testified at trial.

The district court also found that even if there had been an undisclosed tacit agreement, the state habeas court's alternative finding was not unreasonable. Bonner's testimony about the agreement that allowed him to avert the possibility of a capital murder conviction was such that the extent to which he would benefit from the alleged punishment agreement would not materially differ if the jury knew that the prosecution had promised a ten year cap on his sentence. There being no failure to disclose *material* evidence, Cathey failed the third element of the *Brady* analysis.

3. *Our Threshold Analysis*

The record reveals that during the hearing on his motion for new trial, Bonner testified that just prior to his court appearance on the day of his guilty plea, Bonner was not going to sign the plea agreement papers because he wanted something in writing about the "understanding" that his sentence would be at the low end. According to Bonner, the prosecutor told him that there was no such agreement and that if he did not plead guilty he could be charged with capital murder. Bonner further testified that the prosecutor did not threaten him but just did not give him much choice, so he made the decision to sign the plea agreement and plead guilty.

Bonner signed a written plea agreement that reveals no plea bargain about sentencing and no reduction to his sentencing exposure of ninety-nine years imprisonment. Moreover, the plea agreement states that the State would not make a sentencing recommendation. Bonner testified that just before he pled guilty he did not know what his sentence would be and that there was never an agreement for a specific sentence. During the guilty plea colloquy, Bonner said he understood that the trial court could sentence him to any term of imprisonment from five to ninety-nine years. Bonner

9

also said that no one had promised him any "deal." Two prosecutors testified that there was never any agreement other than to charge Bonner with aggravated kidnaping. Bonner's counsel, Connie Williams, said there was no agreement to limit the judge's sentencing discretion although Bonner may have taken what Williams had said to him to mean that there was such an agreement.

Our review of the record reveals that Cathey presented testimony and affidavits indicating that Bonner and Williams believed there was a tacit agreement and that a prosecutor said he thought Bonner would receive a sentence on the lower end of the sentencing range. Nevertheless, his presentation was not the clear and convincing evidence required to rebut the presumption of correctness that the AEDPA requires the district court to attribute to the state habeas court's factual finding that there was no undisclosed agreement . Likewise, the record reveals that the district court properly applied the AEDPA's requisite deference when it determined that the state court disposition of Cathey's application for habeas relief was neither an unreasonable application of law, nor was it contrary to, or an unreasonable application of, established law. Accordingly, reasonable jurists could not debate whether the district court should have determined that Cathey did not make a substantial showing that he was denied a constitutional right on the *Brady* issue presented for our review.

## IV. CONCLUSION

For the foregoing reasons, we find that reasonable jurists could not debate whether the district court's disposition of this *Brady* claim should have been resolved differently and the request for COA is DENIED.