IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 31, 2008

Charles R. Fulbruge III
Clerk

No. 07-70022

RODERICK D. NEWTON

Petitioner-Appellant

v.

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent-Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:03-CV-01770

Before DAVIS, BARKSDALE, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Roderick Newton was sentenced to death in Texas state court for the capital murder of Jesus Montoya. He seeks a certificate of appealability (COA) on five issues from the district court's denial of habeas relief, but concedes three are foreclosed. Newton fails to make the requisite showing that jurists of reason would debate either the district court's application of procedural bars to some of these claims or its resolution on the merits for the rest. DENIED.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

As summarized by the district court, the facts follow:

> On March 8, 1999, Newton and Julian Williams went to a car wash in Dallas, Texas, with the intent to find someone to rob. Newton engaged Jesus Montoya in conversation, and then called Williams over to accompany him into Montoya's truck. Newton drove the truck to an ATM, told Williams to go with Montoya to get Montoya's money, and threatened to shoot Montoya if he ran. When Newton made that threat, his gun lay in his lap. After Montoya was forced to withdraw two hundred dollars, Newton drove Montoya and Williams to a field near an abandoned house and ordered Montoya out of the truck. There, Newton took Montoya's necklace and, after hearing Montoya say that he remembered faces, fatally shot Montoya. The next day, Newton pawned Montoya's necklace.

Newton v. Quarterman, No. 3:03-CV-01770, 2007 WL 945835, at *1 (N.D. Tex. 28 Mar. 2007) (record citations omitted).

In February 2000, after a state-court jury convicted Newton of capital murder, he was sentenced to death. On direct appeal, the Texas Court of Criminal Appeals (TCCA) affirmed the conviction and sentence. Newton v. State, No. 73,778 (Tex. Crim. App. 2002) (unpublished). Newton did not seek review by the Supreme Court of the United States.

While his direct appeal was pending, Newton requested state-court post-conviction relief. It was denied in an unpublished order. Ex parte Newton, Writ No. 55,073-01 (Tex. Crim. App. 15 Jan. 2003) (unpublished).

Newton then requested federal habeas relief. In March 2007, the district court denied relief and subsequently denied a COA. Newton now seeks a COA for five of his six issues raised in district court.

II.

Newton's 28 U.S.C. § 2254 habeas petition, having been filed in 2004, is subject to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). E.g., Penry v. Johnson, 532 U.S. 782, 792 (2001). Under AEDPA, Newton may

not appeal the denial of habeas relief unless he first obtains a COA from either the district, or this, court. 28 U.S.C. § 2253(c); Miller v. Dretke, 404 F.3d 908, 912 (5th Cir. 2005) (citations omitted). The district court must first decide whether to grant a COA; if it denies a COA, it may be requested here. FED. R. APP. P. 22(b)(1). A COA having been denied by the district court, Newton asks this court to grant it.

To obtain a COA, Newton must make "a substantial showing of the denial of a constitutional right". 28 U.S.C. § 2253(c)(2); see Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 483 (2000). To make such a showing, Newton must demonstrate "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further". Miller-El, 537 U.S. at 336 (quoting Slack, 529 U.S. at 484) (internal quotation marks omitted).

When, as here, the district court denies habeas relief for a claim through a procedural ruling, rather than ruling on the claim's merits, the requisite showing is expanded. See Foster v. Quarterman, 466 F.3d 359, 364 (5th Cir. 2006) (citing Hall v. Cain, 216 F.3d 518, 521 (5th Cir. 2000)), cert. denied 127 S. Ct. 2099 (2007). "In that situation, the applicant must show jurists of reason would find debatable whether: the habeas petition states a valid claim of the denial of a constitutional right; and the district court's procedural ruling was correct." Id. (citation omitted) (emphasis added).

In deciding whether to grant a COA, we make only a threshold inquiry into the district court's application of AEDPA to Newton's constitutional claims; we may not consider the factual or legal merits in support of them. Miller-El, 537 U.S. at 336. "When a court of appeals sidesteps this process by first deciding the merits of an appeal, and then justifying its denial of a COA based on its adjudication of the actual merits, it is in essence deciding an appeal without

jurisdiction." Id. at 336-37. For purposes of our threshold inquiry, we are cognizant that the district court was required to defer to the state court's resolution of Newton's claims. Such deference is subject to limited exceptions, which turn on the character of the state court's ruling. Foster, 466 F.3d at 365.

First, on questions of law, as well as mixed questions of law and fact, the district court was required to defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court". 28 U.S.C. § 2254(d)(1); see Miller, 404 F.3d at 913. The state court's decision is considered contrary to clearly established Federal law if it "reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts". Miller, 404 F.3d at 913 (quoting Miniel v. Cockrell, 339 F.3d 331, 337 (5th Cir. 2003)) (internal quotation marks omitted).

Second, our threshold inquiry must recognize the district court's obligation to defer to the state court's factual findings unless they "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding". 28 U.S.C. § 2254(d)(2). Along that line, the district court was required to presume the state court's factual findings were correct, unless Newton rebutted that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Moreover, our threshold inquiry requires our consideration of a COA request against the backdrop of the elements of Newton's underlying constitutional claims. See Miller, 404 F.3d at 913. Needless to say, meaningful review of whether Newton has made a "substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2) requires our considering these elements.

Newton seeks a COA on five issues; whether: (1) the trial court erroneously granted the State's challenge for cause to a venire-member, in violation of the Sixth Amendment; (2) the prosecutor impermissibly called into question Newton's right not to testify, in violation of the Fifth Amendment; (3) the trial court's not defining "criminal acts of violence" violated Newton's due process rights; (4) the trial court relieved the State of its constitutional burden of proving the lack of mitigating circumstances beyond a reasonable doubt; and (5) trial counsel was ineffective at the punishment phase of the trial. None of these issues, especially the three conceded to be foreclosed, satisfies the above-stated standards for a COA's being granted.

## A.

Newton seeks a COA on whether his Sixth Amendment right to an impartial jury was violated when the State's challenge for cause to venire-member Chaffin was granted. That challenge was made on the basis that Chaffin would hold the State to a higher burden in a capital case than in a non-capital case, despite the burden being the same in both instances—beyond a reasonable doubt.

A prospective juror may not be stricken for cause merely because he generally objects to the imposition of the death penalty. Witherspoon v. Illinois, 391 U.S. 510, 521-22 (1968). A strike for cause is appropriate, however, where those views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath". Wainwright v. Witt, 469 U.S. 412, 424 (1985) (footnote and internal quotation marks omitted). "Whether a juror is excludable under the Witherspoon-Witt standard is a question of fact." Ortiz v. Quarterman, 504 F.3d 492, 501 (5th Cir. 2007) (citing Witt, 469 U.S. at 424), petition for cert. filed, No. 07-9100 (28 Jan. 2008).

As stated, AEDPA requires deference to a state court's factual findings unless they "resulted in a decision that was based on an unreasonable

determination of the facts in [the] light of the evidence presented in the State court proceeding". 28 U.S.C. § 2254(d)(2). As also stated, the state court's determination of issues of fact are entitled to a presumption of correctness unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Accordingly, we must determine whether jurists of reason would debate the district court's ruling Newton did not overcome this presumption of correctness by clear and convincing evidence. Ortiz, 504 F.3d at 501. As a result, the district court, pursuant to AEDPA, held the state court decision was not unreasonable.

During voir dire, when the State questioned Chaffin about her feelings about imposing the death penalty, she initially answered:

> When it comes to the penalty phase it might have to be more than the reasonable doubt. I mean there might have to be – what's available now, DNA evidence – I mean in other words, the penalty phase would – in answer to your question, I believe that I could vote for the death penalty if there were absolutely on [sic] question whatsoever. (emphasis added)

After her answer, the State explained to Chaffin that the standard of proof was not elevated in capital cases; it remained "beyond a reasonable doubt". She was asked again how she felt about this standard. Chaffin reiterated that, for her to convict, there would have to be a "smoking gun" or a showing that "[Newton is] over the body". She went on to state she could not convict unless reasonable doubt meant no doubt at all: "[I]t would have to be open and shut that there was no doubt, and if that's beyond a reasonable doubt then yes, I would hold the State higher. If that falls within reasonable doubt, then I'm on board". Chaffin also stated: no matter how strong the circumstantial evidence, she would "need more than that" in a death-penalty case.

The State and trial judge also questioned Chaffin about whether she would be able to convict someone who participated in the crime but was not "the person

that actually pulled the trigger on the gun or stabbed the person". Chaffin answered: "[I]f I could not do that without a burden of proof greater than reasonable doubt on a shooter, I certainly wouldn't be able to do it if he's a non-shooter". The judge then read Chaffin the definition of reasonable doubt, and asked: "Now, armed with that definition, are you going to require more than reasonable doubt?" Chaffin responded "Yes".

Defense counsel then attempted to rehabilitate Chaffin. First, he again asked whether Chaffin could ever sentence someone to death who had not "directly pulled the trigger", referring her to individuals such as "Hitler, Paul Pott [sic], [and] Manson". Chaffin reluctantly stated that there could be some instances in which she could convict, but that "[i]t would be something that I hardly could try to conjure up in order to create some – to create a situation".

Second, defense counsel attempted to elicit a response from Chaffin supporting her ability to apply the beyond-a-reasonable-doubt standard; she answered affirmatively to counsel's question of whether she could apply that standard if she "felt she could act on it without hesitation". In response to even further clarification of the burden of proof, however, Chaffin stated twice more that she would hold the State to a higher burden than in non-capital cases. The judge then granted the State's challenge for cause, to which defense counsel objected.

On direct appeal, the TCCA upheld the dismissal of Chaffin for cause on the basis that Newton had not shown he was deprived of a lawfully constituted jury. Newton v. State, No. 73,778, slip. op. at 2-3 (Tex. Crim. App. 2002) (unpublished).

The above-discussed voir dire colloquy is replete with assertions by Chaffin that she would hold the State to a higher burden in a capital case. See Drew v. Collins, 964 F.2d 411, 417 (5th Cir. 1992) (petitioner failed to overcome presumption of correctness where venire-member "stated on numerous occasions

during voir dire questioning that he would apply a standard higher than what he understood as the reasonable doubt standard"). Although Newton maintains defense counsel sufficiently rehabilitated Chaffin after the trial judge read the proper definition of "beyond a reasonable doubt" and defense counsel was able to elicit responses from Chaffin that she could apply the reasonable-doubt standard, it is immediately followed by another admission that she would hold the State to a higher standard.

B.

In seeking a COA for his second claim, Newton maintains: the State commented on his failure to testify, in violation of his Fifth Amendment rights. Comments by a prosecutor on a defendant's exercising his Fifth Amendment right not to testify are, of course, constitutionally impermissible. Griffin v. California, 380 U.S. 609, 615 (1965). To determine whether such Fifth-Amendment rights have been violated, the proper inquiry is: "(1) whether the prosecutor's manifest intent was to comment on the defendant's silence or (2) whether the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence". United States v. Grosz, 76 F.3d 1318, 1326 (5th Cir. 1996) (quoting United States v. Collins, 972 F.2d 1385, 1406 (5th Cir. 1992)) (internal quotation marks omitted).

Under the first possibility, "[t]he prosecutor's intent is not manifest if there is some other, equally plausible explanation for the remark". Id. Under the second possibility, "the question is not whether the jury possibly or even probably would view the challenged remark in this manner, but whether the jury necessarily would have done so". Id. (citation, emphasis, and internal quotation marks omitted). Moreover, and especially relevant to the requested COA on this issue, the Fifth Amendment is not violated when the comments are made in "a fair response to a claim made by defendant or his counsel". United States v. Robinson, 485 U.S. 25, 32 (1988).

At trial, Newton called Detective Meek as a witness; he was the lead investigator for Newton's case. On direct examination, Newton's counsel questioned the Detective regarding potential deficiencies in his investigation. Along that line, Newton's counsel questioned the Detective extensively about which facts obtained from Williams (Newton's co-defendant) had been corroborated by others. This line of questioning was an apparent attempt to cast doubt on the reliability of Williams' earlier testimony.

On cross-examination, the prosecutor attempted to rehabilitate the Detective by eliciting testimony reducing the significance of the lack of corroboration for certain facts:

Q. Now, as [defense counsel] was questioning you about the statements given by . . . Williams, sir, simply because something is uncorroborated, does that make it untrue?

A. No, sir.

Q. Is it uncommon to have statements given to you where there are facts that are simply incapable of being corroborated by your department?

A. Yes, sir.

Q. And again, does it make those statements necessarily untrue because you cannot independently verify them?

A. No, sir.

Q. In fact, several of these statements – for instance, what occurred in this pickup truck when . . . Newton, . . . Williams and [the victim] were there by themselves? Was it your understanding that only those three people were inside the pickup at times?

A. Yes, sir.

Q. So, as to what was done or what was said, certainly . . . Williams told you what had happened – correct?

9

A.    Correct.

Q.    [The victim] is dead so he can't corroborate it, can he?

A.    No, sir.

Q.    And I believe [defense counsel] talked about other sources. Would it be fair to say the only other source that could corroborate what happened would be the Defendant himself, . . . Newton?

A.    Correct.

      [DEFENSE COUNSEL]:    Your honor, I think that's a comment on his failure to testify.

      THE COURT:  Overruled at this time.

Q.    (By [prosecutor]) And certainly there were occasions, were there not, described in the statement where only . . . Newton and . . . Williams were present in the vehicle?

A.    Yes, sir.

Q.    When certain things were said.

A.    Yes, sir.

On direct appeal, the TCCA held the prosecutor's comments were merely a response to, and not outside the scope of, an invitation by Newton's counsel. In so holding, the TCCA noted the requirement, under Texas law, that accomplice testimony be corroborated by other evidence in order for a conviction to be sustained.  Newton v. State, No. 73,778, slip. op. at 7 n.7 (Tex. Crim. App. 2002) (unpublished) (citing TEX. CRIM. PROC. CODE. art. 39.14).  The TCCA ruled the complained-of colloquy was merely the State's attempt "to refute the appellant's implication that evidence must corroborate in every detail of

Williams's testimony and to undercut the defense's theory that other unidentified persons participated in the crime". Id. at 9.

The district court determined the TCCA's rulings to be "correct and reasonable applications of Supreme Court precedent". Newton, 2007 WL 945835, at *9. Relying on United States v. Robinson, 485 U.S. 25 (1988), the district court held: "The state court carefully reviewed the context in which this exchange occurred, and reasonably concluded that the prosecutor was fairly responding to the defense invitation before the jury". Id.

Robinson, 485 U.S. at 34, limited the protections afforded a criminal defendant by Griffin and its progeny. Newton's counsel's primary justification for a COA on this issue (debatable among reasonable jurists) is noting that three Justices dissented in Robinson.

## C.

In seeking a COA for his third claim, Newton contends the trial court violated his right to due process of law by refusing at the punishment phase to define the phrase "criminal acts of violence", despite the jury's request that it do so. This claim does not appear to have been exhausted in state court.

On the other hand, the State does not assert a procedural bar, nor did the district court decide the issue on that basis. See 28 U.S.C. § 2254(b)(2) (allowing for denial of a petition on the merits notwithstanding failure to exhaust in state court) & (3) (exhaustion must be expressly waived by the State). Instead, the district court noted Newton conceded this claim is foreclosed by established circuit precedent. See James v. Collins, 987 F.2d 1116, 1120 (5th Cir. 1993). Newton makes that concession here, presenting the issue only to preserve it for possible further review.

## D.

11

For his fourth COA request, Newton maintains the trial court violated his Sixth and Fourteenth Amendment rights by refusing at the punishment phase to place the burden on the State to prove, beyond a reasonable doubt, the lack of mitigating evidence. Newton did not exhaust this claim in state court.

The district court denied the claim on the following bases: (1) it had not been exhausted; (2) Newton conceded this contention is barred by circuit precedent, see Hughes v. Johnson, 191 F.3d 607, 625-26 (5th Cir. 1999); and (3) Newton conceded the claim is not cognizable on collateral review, see United States v. Brown, 305 F.3d 304, 310-11 (5th Cir. 2002). Newton, 2007 WL 945835, at *3. Newton concedes the claim is foreclosed by our precedent, presenting it only to preserve it for possible further review.

## E.

Finally, Newton contends trial counsel was ineffective at the punishment phase by failing to investigate and present mitigation evidence that could have spared him the death penalty. In this regard, he claims the issue was not raised in state court due to ineffective assistance of state-habeas counsel.

The district court found this issue procedurally barred because it was not exhausted in state court. Newton maintained in district court he should be excused from any procedural default because his court-appointed state-habeas counsel, who could have raised the issue concerning trial counsel, likewise provided ineffective assistance. The district court denied this contention because there is no constitutional right to counsel in a state-habeas proceeding. See Coleman v. Thompson, 501 U.S. 722, 752 (1991).

Conceding both the procedural bar's being correctly applied by the district court and the absence of a right to effective assistance of state-habeas counsel, Newton presents this issue only to preserve it for possible further review.

## III.

For the foregoing reasons, a COA is DENIED.